141 N.J. Super. 394 (1976)
358 A.2d 488
ALBERT MAC NEIL, ET AL., PLAINTIFFS-APPELLANTS,
v.
ANN KLEIN, COMMISSIONER OF THE DEPARTMENT OF INSTITUTIONS AND AGENCIES OF THE STATE OF NEW JERSEY, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 9, 1976.
Decided April 1, 1976.
*398 Before Judges LYNCH, LARNER and HORN.
Mr. Steven L. Lefelt and Mr. Richard G. Singer argued the cause for appellants.
Mr. Joseph T. Maloney, Deputy Attorney General, argued the cause for respondent Klein (Mr. William F. Hyland, Attorney General, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
Mr. William E. Ozzard, Somerset County Counsel, argued the cause for respondents Maggio and Balent.
Mr. Franklin H. Berry, Jr., Ocean County Counsel, argued the cause for respondents Board of Chosen Freeholders of County of Ocean and Brown.
A brief was submitted by Mr. John T. Madden, Sussex County Counsel, on behalf of respondents Cardineau and Willis.
A brief was submitted by Mr. Ivan M. Sherman, Cumberland County Counsel, on behalf of respondents Scarani and DiBiase.
A brief was submitted by Mr. Harold J. Ruvoldt, Jr., Hudson County Counsel, on behalf of respondents, Officials of the County of Hudson (Mr. Arthur G. Williamson, Assistant County Counsel, on the brief).
A statement in lieu of brief was submitted by Mr. Edwin K. Large, Jr., Hunterdon County Counsel, on behalf of respondents Winter and Atkinson.
A statement in lieu of brief was submitted by Mr. Eugene P. Chell, Gloucester County Counsel, on behalf of respondents, Officials of the County of Gloucester.
*399 A statement in lieu of brief was submitted by Mr. Herman B. Hoffman, Middlesex County Counsel, on behalf of respondents, Officials of the County of Middlesex (Mr. Lawrence J. Fitzhenry, Assistant County Counsel, on the statement).
A statement in lieu of brief was submitted by Mr. Ralph V. Mancini, Union County Counsel, on behalf of respondents Maguire and Carey.
A statement in lieu of brief was submitted by Mr. Robert L. Schumann, Warren County Counsel, on behalf of respondents Bosco and Scheffler.
A statement in lieu of brief was submitted by Mr. John J. Pillsbury, Monmouth County Counsel, on behalf of respondents Irwin and Cook.
A statement in lieu of brief was submitted by Mr. Francis Patrick McQuade, Essex County Counsel, on behalf of respondents Cooke, Scanlon and Magnusson.
The opinion of the court was delivered by HORN, J.A.D.
Plaintiffs, 47 in number, are or were at the time when they instituted this action on April 17, 1974 inmates in county detention facilities as pretrial detainees or as convicted prisoners. They instituted a class action in the Superior Court, Chancery Division, Mercer County, as representatives of all prisoners incarcerated in the county jails of New Jersey, asserting that their prerogatives to be free from cruel and unusual punishment (including grossly inadequate medical care, the lack of rehabilitative programs, invasions of privacy and interference with their right of communication), their rights to counsel, to due process and to access to the courts, and similar conditions (including arbitrary and inhumane limitations on visitation and association) were being denied in each of said county facilities, *400 in violation of sections of the United States Constitution, the New Jersey Constitution and various laws of this State.
Defendants are the respective sheriffs, wardens and other county officials alleged to exercise or having the power to exercise "custody, rule, keeping and charge" of the respective facilities in all the counties of the State. Additionally the complaint names as a defendant Ann Klein, individually and as Commissioner of the Department of Institutions and Agencies of the State of New Jersey, on the allegations that she is responsible for the administration of the county penal institutions as well as the care and custody of the inmates thereof, in accordance with N.J.S.A. 30:1-2 and 30:1-14; that she is empowered by N.J.S.A. 30:1-15 to supervise and inspect local penal institutions with respect to the proper management thereof, with the power to institute civil actions against those who violate the efficient and humane administration thereof, N.J.S.A. 30:1-16, and that her failure to perform her obligations constitutes a violation of plaintiffs' civil rights, entitling them to a remedy § 1983, against her under 42 U.S.C.A.[1]
Plaintiffs appeal because after hearings on appropriate motions filed by counsel for the respective defendants, the trial judge (1) dismissed the action against Klein individually and as Commissioner on the ground that the complaint failed to state a cause of action against her, R. 4:6-2, and (2) dismissed the action against all parties except the officials of Mercer County, on the ground that they were improperly joined as defendants, R. 4:29-1(a).[2]
After orders implementing the trial judge's decisions were entered and notices of appeal were filed with the Appellate Division all appeals were consolidated in this Division.
*401 The complaint recognizes that conditions and the asserted deficiences are different in each facility and that certain alleged deficiencies or substandard conditions in some facilities are not present in others or are present to different degrees. The complaint so indicates and it is patently asserted that the objective of the action and the purpose of joining all the parties from outside Mercer County is to "establish state-wide minimum constitutional standards" and to obtain relief as to each facility in accordance with those standards.

THE DISMISSAL IN FAVOR OF COMMISSIONER KLEIN
Plaintiffs first aver that the duties imposed by various statutes upon Klein are mandatory, but even if they are only discretionary the trial judge erred in entering the dismissal in her favor. The statutes creating the duties, say plaintiffs, are N.J.S.A. 30:1-15 and 16. Under the former the Commissioner (and the State Board of Institutional Trustees) has the power of "visitation and inspection" of all county jails and places of detention for the purpose of inspecting and observing the physical condition thereof, the physical condition of the inmates, the care, treatment and discipline thereof, and also to determine whether such persons so committed are properly and adequately boarded, lodged, treated, cared for and maintained. She and said state board may make such report with reference to the result of such observation and inspection and such recommendations with reference thereto as they may determine.
Under N.J.S.A. 30:1-16 if it shall appear that
* * * the laws relating to the construction, management and affairs * * *, and the care, treatment, government and discipline of its inmates * * * are being violated, or that inmates * * * are cruelly, negligently or improperly treated or inadequate provision is made for their sustenance * * * or other condition necessary to their suitable and proper well being, the Commissioner * * * may institute a civil action against the proper [persons] responsible for such violation or omission. [Emphasis supplied]
*402 N.J.S.A. 30:1-17 permits the right and powers, "so far as they relate to the investigation of the * * * agencies," to be enforced by a civil action. If the Commissioner believes any such matter regarding the management or affairs of any such institution or any inmate requires legal investigation or action of any kind, the Commissioner may give notice to the county prosecutor, who shall make inquiry and take such proceedings as he may deem necessary and proper.
Observing that the nonmandatory word "may" is used as indicated in N.J.S.A. 30:1-16, plaintiffs contend that since it is employed in the statute to delegate power the exercise of which is important for the protection of the public interests, and since it can clearly be taken from the statute, a mandatory significance was intended. Kennelly v. Jersey City, 57 N.J.L. 293 (Sup. Ct. 1894); McDonald v. Hudson Cty. Bd. of Chosen Freeholders, 99 N.J.L. 170 (E. & A. 1923); Bayonne v. North Jersey, etc., Comm'n, 30 N.J. Super. 409, 417 (App. Div. 1954).
We do not agree with this contention. We find no clear evidence of the intention to impose mandatory responsibilities on the Commissioner by virtue of these enactments. Most importantly, the word "may" should be given the meaning which conforms to the legislative intent. Harvey v. Essex Cty. Bd. of Freeholders, 30 N.J. 381, 391-392 (1959). See also, Leeds v. Harrison, 9 N.J. 202 (1952); Diodato v. Camden Cty. Park Comm'n, 136 N.J. Super. 324 (App. Div. 1975).
In this process it is necessary to determine the sense of the statutory scheme in which the words appear. Durgin v. Brown, 37 N.J. 189, 197 (1962). The Commissioner heads the Department of Institutions and Agencies, N.J.S.A. 30:1-2, and has the power to determine all matters relating to the development and regulation of the administration of all institutions "within his jurisdiction." Such rules, regulations, orders and directions issued by the Commissioner shall be accepted and enforced by the executive in *403 charge of any institution within the jurisdiction of the department. N.J.S.A. 30:1-12. The correctional institutions of the Department are specified in N.J.S.A. 30:1-7. None of the county detention facilities is included.
Therefore, the Commissioner has the power to issue orders, rules and regulations for the state correctional institutions, being the prisons, reformatories and certain other enumerated institutions within her Department, and to administer and control them. In contrast, as already shown, the applicable statutes give her only the mere right to visit and inspect the county institutions and to make a report or recommendations, but with no power or duty to either approve or to set standards or to issue rules, regulations, orders or directions with respect thereto. Accordingly, we hold that the word "may" in N.J.S.A. 30:1-16 was used, as it inherently implies, in the permissive sense.
As asserted by plaintiffs, the care, operation and management of the various county jails and other similar facilities are by law the responsibility of either the county sheriffs or the county boards of freeholders. N.J.S.A. 30:8-17 to 19.
Plaintiffs also argue that, assuming the Commissioner's obligations are only discretionary, her refusal or failure to act accordingly constitutes an abuse of discretion and, therefore, her conduct violates the Equal Protection Clause of the 14th Amendment and thus a cause of action arises in their favor under the Civil Rights Act, 42 U.S.C.A. § 1983, which makes one liable for redress if he, under color of any enactment, regulation, custom or usage of any state or territory subjects any citizen of the United States to the deprivation of any civil rights.
We do not agree. Before the Civil Rights Act can be applied to compel the granting of relief by a particular official, there must be a finding that that official is in fact empowered by law to act. As the trial judge stated, Klein was only empowered to bring an action under N.J.S.A. *404 30:1-16.[3] This only placed her in the same position as plaintiffs, who have already instituted this action. It does not change the existing fact that, apart from that, she is powerless under the applicable statutes to remedy the alleged deficiencies in the county institutions.
Plaintiffs suggest that because prisoners may be transferred from one county jail to another pursuant to N.J.S.A. 2A:XXX-XX-XX and because under various statutes the Commissioner is required to (1) establish and enforce regulations governing work release in county prisons, N.J.S.A. 30:8-44-50; (2) establish and enforce regulations governing good-time credit in county prisons, N.J.S.A. 30:8-28.2, and (3) establish and enforce regulations forcing county prisons to permit incoming and outgoing correspondence in a language other than English, N.J.S.A. 30:4-8.3, these directions coupled with the powers of inspection and recommendation under N.J.S.A. 30:1-16, spell out a legislative intention to vest sufficient supervisory powers in the Commissioner over county incarceratory institutions to make her responsible to plaintiffs.[4] They assert that Jenkins v. Morris Tp School Dist. and Bd. of Ed., 58 N.J. 483 (1971), closely parallels the instant circumstances and is persuasively favorable.
In Jenkins our Supreme Court held that the Commissioner of Education had the authority to take suitable steps toward preventing the withdrawal of students of one school district from another in order to avoid racial imbalance. Plaintiffs set forth that the court "relied heavily" on the ability and practice of the two school districts in question to *405 transfer pupils between districts, and upon specific legislation which authorized such transfers, to justify its decision "that a state-wide office had state-wide power over these institutions."
We do not read Jenkins the same way. The court (at 494) held, apart from all else, that in fulfillment of the mandate of our Constitution for legislative maintenance of a thorough and efficient system of free public schools our Legislature has adopted comprehensive enactments which, among other things, delegate the "general supervision and control of public education" to the State Board of Education. N.J.S.A. 18A:4-10. As already observed, such broad powers with respect to county detention facilities were not granted by the Legislature to the Commissioner. We therefore hold that the trial judge did not err in dismissing the suit against defendant Klein.

THE DISMISSAL OF ALL COUNTY OFFICIALS OTHER THAN THOSE OF MERCER COUNTY
The trial judge dismissed without prejudice all defendants except those of Mercer County. Plaintiffs now maintain that (a) defendant county officials were properly joined under R. 4:28-1(a), which provides for mandatory joinder; (b) the judge erred in not allowing permissive joinder of defendants under R. 4:29-1(a), and (c) severance subdivides the class of plaintiffs and thus nullifies the thrust of their litigation.
R. 4:28-1, entitled "Joinder of Persons Needed for Just Adjudication," provides in part:
(a) Persons to be Joined if Feasible. A person who is subject to service of process shall be joined as a party to the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest in the subject to the action and is so situated that the disposition of the action in his absence may either (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or other inconsistent obligations by reason of his claimed *406 interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant.
Plaintiffs argue that since this suit is essentially one whose aim is the establishment of uniform standards in county institutions, all defendant county officials must be present inasmuch as each has an undeniable interest in the outcome of the litigation and, in any case, all must appear to insure that there will be true uniformity.
Under this rule it is the nature and character of the claim in an action which governs the classification of the parties as indispensable. Jennings v. M. & M. Transportation Co., 104 N.J. Super. 265, 272 (Ch. Div. 1969). Thus, the court in Allen B. DuMont Laboratories, Inc. v. Marcalus Mfg. Co., 30 N.J. 290 (1959), said:
Whether a party is indispensable depends upon the circumstances of a particular case. As a general proposition, it seems accurate to say that a party is not truly indispensable unless he has an interest inevitably involved in the subject matter before the court and a judgment cannot be made between the litigants without either adjudging or necessarily affecting the absentee's interest. [at 298]
Judging the facts in the instant case by these standards, we do not think it can be sensibly argued that it is necessary that all officials of the 21 counties be joined in the same action. As alleged in the complaint, different deficiencies are said to be present in each institution. The inmates of each can obtain complete relief from the administrators of the institutions in which they reside. If relief is granted against one official, this does not have a binding effect on the interests of the others but might well serve as persuasive precedent in subsequent suits in other counties.
From the outset plaintiffs' arguments proceed on the premise that they cannot obtain complete relief without the simultaneous appearance of all defendants. They equate the words "complete relief" with the establishment of a statewide standard. Without a right to the establishment of a *407 statewide standard by the instant suit, the right to mandatory joinder falls. We do not feel we may afford such relief.
Plaintiffs also assert that the trial judge erred in ignoring the mandatory joinder rule and holding that if defendants could not be permissively joined, there was no need to determine whether they could be mandatorily joined. They argue that the two rules are independent of each other and that the judge should have evaluated the propriety of joinder under each.
Although no authority in this State has ever reached this issue, commentary on Fed. R. Civ. Proc. 19, from which New Jersey's mandatory joinder rule is taken, is to the contrary. See 3A Moore's Federal Practice (3 rev. ed. 1970), par. 19.01[5]. However, since we do not subscribe to plaintiffs' argument that the court should promulgate statewide standards, the argument for mandatory joinder falls.
Next, plaintiffs urge that the judge misapplied the rule of court allowing for permissive joinder of parties. That rule, R. 4:29-1, provides in part:
(a) Generally. All persons may join in one action as plaintiffs or be joined as defendants jointly, severally in the alternative, or otherwise, if the right to relief asserted by the plaintiffs or against the defendants arises out of or in respect of the same transaction, occurrence, or series of transactions or occurrences and involves any question of law or fact common to all of them. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.
The trial judge agreed that there were common questions of law but that plaintiffs' right to relief did not arise out of the same transaction or series of transactions. The error here, say plaintiffs, was to ignore certain circumstances common to all county institutions: that all are subject to regulations prepared and enforced by the Department of Institutions and Agencies; that all offenders may be sentenced to *408 either county or state institutions; that state prisoners may be transferred to county institutions and county prisoners from one county jail to another. Thus, argue plaintiffs, each county institution cannot claim that its maintenance is independent from that of the others  all are subject to the same statutory standards. Further, the formulation of statewide standards of confinement requires the participation of representatives of all counties. Finally, the argument runs, the presence of all these defendants is necessary to afford each plaintiff complete relief and to avoid the possibility of 21 different and conflicting standards arising out of 21 suits.
The aim of permissive joinder is to allow all parties to obtain the largest efficient unit of litigation. The power of the court to sever is a discretionary one, but its guide is the joint policy of avoiding a multiplicity of suits and expediting the determination of legal controversies. Broderick v. Abrams, 116 N.J.L. 40, 43 (Sup. Ct. 1935). Thus, the addition of parties should be allowed without limit so long as the rule's two requirements are met and so long as the trial will be just and convenient. 2 Schnitzer and Wildstein, New Jersey Rules Service 1040 (1954).
As to the rule's requirement that the right to relief arises out of "the same transaction, occurrence, or series of transactions," this phrase contemplates successive transactions or at least those of a similar nature. They need not occur at the same time or in the same place, but should be those that
* * * are nevertheless so causally connected or closely allied or related in character or purpose as to constitute components or links in the same evolving complex of events. [2 Schnitzer and Wildstein, supra at 1046]
In the usual case in which such joinder is allowed there has been an emphasis on wrongdoing by multiple defendants that is pursuant to a common purpose or part of a single scheme. For example, in Galler v. Slurzberg, 22 N.J. Super. 477 (App. Div. 1952), certif. den. 11 N.J. 582 (1953), plaintiff, *409 a soft drink distributor, was allowed to join as defendants 27 subdistributors who, plaintiff alleged, were engaged in a conspiracy to destroy her business. The court found it determinative that the acts complained of were in furtherance of a single purpose. 22 N.J. Super. at 483.
However, plaintiffs' complaint in the instant case has alleged no common purpose on the part of defendants, but urges that a common thread be recognized in the statewide system of discretionary conduct by defendant officials, which conduct has deprived plaintiffs of constitutional rights. The problem which plaintiffs must overcome  and which they have not addressed  is that prisoners in one county's jail have claims that can be asserted only against the defendants in that county and not against others. No New Jersey case has confronted precisely this type of joinder problem.
Plaintiffs rely on United States v. Mississippi, 380 U.S. 128, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965), where the Attorney General brought suit in the United States District Court against the state, three members of its board of elections and six county registrars, charging them with engaging in practices that deprived Mississippi's blacks of their voting rights. The district court had ordered severance of the county registrars, reasoning that the Government was seeking to hold them liable jointly, essentially, for torts committed by each individually. The Supreme Court disagreed, finding that the complaint's charges of a statewide system designed to enforce voter registration law discriminatorily passed the test as a "series of transactions." 380 U.S. at 142-143, 85 S.Ct. 808, 13 L.Ed.2d 726. As already mentioned, there is no claim of conspiracy or other interaction among the county officials in the instant case. Accordingly, United States v. Mississippi does not support plaintiffs' position.
Courts have adhered to no hard and fast approach to the term "transaction or series of transactions." What they look for is a logical relationship between claims which "would permit all reasonably related claims for relief by or against *410 different parties to be tried in a single proceeding." Mosley v. General Motors Corp., 497 F.2d 1330, 1333 (8 Cir.1974). See 7 Wright, Federal Practice and Procedure, § 1653 at 270 (1972).
The relationship in the instant case is based on ties so tenuous and inconsequential that they cannot be said to arise from the same series of transactions. Although there are several statutes which all county administrators must obey, the conditions in each county's institutions are peculiar to that county. As the trial judge noted, as a practical matter plaintiffs seek 21 different trials in one. They ask for differing relief for each county or 21 differently worded injunctions as the result of one trial. All the implications of such result need not be explored. Suffice it to say that to require counsel for 20 counties to be present while the case of the other one is tried would hardly serve the causes of judicial economy and fairness to the parties, which, after all, are the policies behind R. 4:29-1.
Of course, severance frustrates plaintiffs' ultimate goal, creation of a statewide standard, and perhaps encourages conflicting judgments in the various counties. This argument cannot be answered completely, but plaintiffs are certainly not left without recourse. It is still open for them to have the constitutionality of the conditions of each county adjudicated on a case-by-case basis. If such a standard can be established in one county, they will be aided in their next suit thereby.
In federal cases where plaintiffs have sought joinder of defendants when there are multiple parties on each side, courts have generally ordered severance, absent some allegation of conspiracy or joint activity on the part of defendants. See e.g., Nassau Cty. Ass'n of Insurance Agents v. Aetna Life & Cas. Co., 497 F.2d 1151, 1154 (2 Cir.), cert. den. 419 U.S. 968, 95 S.Ct. 232, 42 L.Ed.2d 184 (1974) (plaintiff insurance agents could not join as defendants insurance companies where the practices of one company were not shown to *411 be related to those of the others); Hall v. E.I. DuPont deNemours & Co., 345 F. Supp. 353, 381 (E.D.N.Y. 1972) (severance ordered for suits by 18 plaintiffs against explosive manufacturers insofar as the claims related to factually distinct accidents). Plaintiffs' complaint contains no allegations of joint activity by the 21 county administrators. As already observed, it does no more than charge that a different set of unconstitutional circumstances exists in each.
Finally, plaintiffs set forth that the dismissals effectively subdivide the plaintiff class into subclasses, thus nullifying the "main thrust of the litigation," contrary to the admonitions in Riley v. New Rapids Carpet Center, 61 N.J. 218, 221 (1972).
The trial judge never reached the question of whether this suit was certifiable as a class action. In Riley two residents of this State brought an action alleging that they, and others similarly situated, had been defrauded by defendants' advertisements. The trial court denied authorization to maintain the suit as a class action because of "diverse specifications of fraud" contained in affidavits of members of the plaintiff class other than those named. The Supreme Court reversed, holding that "refusal to authorize a class action denied the main thrust of the litigation."
In drawing a parallel between their situation and that of the defrauded parties in Riley, plaintiffs aver that the defendant county officials have acted in a manner that applies to their class as a whole. Thus, it is said that this case is much the same as Riley, and plaintiffs cannot now achieve the relief they seek (i.e., establishment of statewide standards).
R. 4:32, "Class Actions," was adopted from the federal rules. Its language is identical to that of Fed. R. Civ. Proc. 23. And, if the action brought by plaintiffs in the instant case is a class action, then it is properly denominated an R. 4:32-1(b) (2) action, which provides in part:
(b) Class Actions Maintainable. An action may be maintained as a class action if * * *

*412 * * * * * * * *
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole * * *.
Thus, a 1(b) (2) class action is one where, on behalf of the class as a whole, final injunctive or declaratory relief is appropriate.[5] 3B Moore's Federal Practice, (3 rev. ed. 1975), § 23.45 at 645. And, if under 1(b)(2) a court affords individual remedies to certain of the class members, this is relief "apart from the class action" and not the "broad injunctive relief" that the rule contemplates. Bing v. Roadway Express, Inc., 485 F.2d 441, 448 (5 Cir.1973).
An example of a 1(b)(2) action that may be maintained by multiple plaintiffs against multiple defendants can be found in Samuel v. University of Pittsburgh, 56 F.R.D. 435 (W.D. Pa. 1972). There the court certified as a class all women university students married to nonresidents to challenge the constitutionality of a rule under which those female students were classified as nonresidents for tuition purposes. Named as defendants were state universities and various state officials. 56 F.R.D. at 439-440. Clearly, there was a common thread in that action, one rule which affected all plaintiffs in a like manner. That the court in Samuel saw an ability to grant declaratory and injunctive relief "with respect to the class as a whole" is obvious.
The very terms of R. 4:32-1(b) (2) militate against plaintiffs maintaining the instant suit as a class action with their class composed of all county detention facility inmates. To grant injunctive and declaratory relief to the entire class in the instant case is plainly impossible. Conditions are admittedly different as to the institutions in each county. So if this were to proceed as a class action, as already mentioned in the case of the diverse defendants, it would amount to no *413 more than suits by 21 subclasses of prisoners, each subclass bringing different factual allegations against the defendants from the county in which they are incarcerated. Again, the product would be 21 differently worded injunctions  a result that hardly furthers the "economy of effort and expense" which the Riley court declared the class action was designed to achieve. 61 N.J. at 227.
J.W. Walker v. City of Houston, 341 F. Supp. 1124 (S.D. Texas 1972), was not a 1 (b) (2) action, but it demonstrates the propriety of a subdivision of classes in a case such as the instant one. Plaintiffs were all ex-members of various pension funds and brought an action against the administrators of those funds. The court concluded that there had been misjoinder and created subclasses of plaintiffs, each of which consisted of the ex-members of one fund, who could then bring suit against defendants connected with the operation of that fund. 341 F. Supp. at 1132, 1134. See Terrell v. Humble Oil & Refining Co., 80 N.J. Super. 51 (App. Div. 1963).
Plaintiffs further say that if they are afforded an opportunity for discovery, they would then demonstrate the viability of their suit as a class action. In particular, they argue that if discovery would enable them to gather further data that shows the transferability of inmates from one county to another, they would show the interdependence of the institutions of the various counties. Assuming existence of the facts which they assert discovery might show, it adds no weight to their arguments, because fundamentally they each are concerned with different problems in different institutions. Thus, no plaintiff would be limited in his proof to evidence common to all plaintiffs, nor is common relief sought. Terrell v. Humble Oil & Refining Co., supra.
For the foregoing reasons, the judgment is affirmed.
NOTES
[1] State courts are required to accept jurisdiction of such action. Testa v. Katt, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947).
[2] R. 4:29-2 authorizes the court to sever trials in cases of improper joinder. In the instant case the trial judge in the interests of justice, felt that dismissals were more appropriate. Appellants have made no issue of this from the standpoint of form.
[3] United States Trust Co. of New York v. New Jersey, 69 N.J. 253 (1976), states: "However, mandamus will not lie if the duty to act is a discretionary one and the discretion has been exercised."
[4] The spelling out of specific powers in these instances, and the provisions of N.J.S.A. 30:1-7 and 12, further evidence the legislative intent to withhold supervisory jurisdiction from the Commissioner. See In re Keogh-Dwyer, 106 N.J. Super. 567 (Law Div. 1969), aff'd 54 N.J. 523 (1969).
[5] The class action in Riley was a 1(b) (3) action  one in which the class members sought money damages.