206 N.J. Super. 414 (1985)
502 A.2d 1188
STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION, PLAINTIFF,
v.
MIDDLESEX COUNTY BOARD OF CHOSEN FREEHOLDERS, SOMERSET COUNTY BOARD OF CHOSEN FREEHOLDERS, UNION COUNTY BOARD OF CHOSEN FREEHOLDERS, MERCER COUNTY BOARD OF CHOSEN FREEHOLDERS, HUNTERDON COUNTY BOARD OF CHOSEN FREEHOLDERS, MONMOUTH COUNTY BOARD OF CHOSEN FREEHOLDERS AND HUDSON COUNTY BOARD OF CHOSEN FREEHOLDERS, DEFENDANTS,
v.
MORRIS COUNTY BOARD OF CHOSEN FREEHOLDERS, GLOUCESTER COUNTY BOARD OF CHOSEN FREEHOLDERS, CAMDEN COUNTY BOARD OF CHOSEN FREEHOLDERS, PASSAIC COUNTY BOARD OF CHOSEN FREEHOLDERS, ATLANTIC COUNTY BOARD OF CHOSEN FREEHOLDERS, OCEAN COUNTY BOARD OF CHOSEN FREEHOLDERS, SUSSEX COUNTY BOARD OF CHOSEN FREEHOLDERS, WARREN COUNTY BOARD OF CHOSEN FREEHOLDERS, AND HACKENSACK MEADOWLANDS DEVELOPMENT COMMISSION, THIRD PARTY DEFENDANTS.
Superior Court of New Jersey, Chancery Division Middlesex County.
Decided June 12, 1985.
*416 Paul H. Schneider, Deputy Attorney General, for plaintiff (Irwin I. Kimmelman, Attorney General of New Jersey, attorney).
Linda Hatt for defendant Middlesex County Board of Chosen Freeholders (John J. Hoagland, Middlesex County Counsel, attorney).
William E. Ozzard, Somerset County Counsel, for defendant Somerset County Board of Chosen Freeholders (Ozzard, Rizzolo, Klein, Mauro & Savo, attorneys).
*417 Robert C. Doherty, Union County Counsel, for defendant Union County Board of Chosen Freeholders.
Paul T. Koenig, Jr., Mercer County Counsel, for defendant Mercer County Board of Chosen Freeholders (Arnold C. Lakind, of counsel and on the brief).
Gaetano M. DeSapio, Hunterdon County Counsel, for defendant Hunterdon County Board of Chosen Freeholders.
Frank T. Koserowski for defendant Hudson County Board of Chosen Freeholders (Joseph V. Kealy, Jr., Acting Hudson County Counsel, attorney).
Herbert M. Strulowitz for third party defendant Morris County Board of Chosen Freeholders (Armand L. D'Agostino, Morris County Counsel, attorney).
Erwin G. Goovaerts for third party defendant Sussex County Board of Chosen Freeholders (Donald L. Kovach, Sussex County Counsel, attorney).
Peter E. Markens, Deputy Attorney General, for third party defendant Hackensack Meadowlands Development Commission (Irwin I. Kimmelman, Attorney General of New Jersey, attorney).
SKILLMAN, J.S.C.
The primary issue before the court is whether the New Jersey Department of Environmental Protection (DEP) may sue a county for its alleged failure to adopt an adequate solid waste management plan in accordance with the Solid Waste Management Act N.J.S.A. 13:1E-1 et seq., (the Act) instead of exercising its own administrative powers to develop a satisfactory plan.
DEP has filed suit against seven counties  Hudson, Middlesex, Hunterdon, Mercer, Somerset, Union and Monmouth.[1] Although *418 the allegations against the defendants vary to some extent, the focus of the complaint is that each county has failed to make adequate provision in its solid waste management plan for siting landfills and resource recovery facilities. The relief sought includes declarations that the counties have failed to adopt plans which comply with the Act and directions that they adopt plan amendments, including provisions for interdistrict agreements with other counties. The complaint also seeks imposition of statutory penalties against the defendant counties.
Mercer and Hunterdon have moved to dismiss. They argue, first of all, that DEP has improperly joined the seven counties in a single lawsuit in Middlesex County rather than filing separate lawsuits in each county. In the alternative, they argue that the action should be dismissed because the exclusive remedy for a county's failure to discharge its solid waste planning responsibilities is DEP's exercise of its own planning powers.

I
There are two prerequisites for permissive joinder of parties: the right to relief asserted by the plaintiffs or against the defendants: (1) must arise "out of or in respect of the same transaction, occurrence, or series of transactions or occurrences," and (2) must involve a "question of law or fact common to all of them." R. 4:29-1(a). "The aim of permissive joinder is to allow all parties to obtain the largest efficient unit of litigation." MacNeil v. Klein, 141 N.J. Super. 394, 408 (App.Div. 1976), certif. den. 72 N.J. 455 (1976). The court's guide in deciding whether to permit joinder "is the joint policy of avoiding a multiplicity of suits and expediting the determination of legal controversies.... Thus, the addition of parties should be *419 allowed without limit so long as the rule's two requirements are met and so long as the trial will be just and convenient." Id.
In determining whether the rule's first requirement has been met, "[c]ourts have adhered to no hard and fast approach to the term `transaction or series of transactions.' What they look for is a logical relationship between claims which `would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding.'" Id. at 409-410, quoting Mosley v. General Motors Corp., 497 F.2d 1330, 1333 (8th Cir.1974).
Such a logical relationship may be found in DEP's allegations and demands for relief against the six defendant counties. A central theme of the Act is that solid waste planning must be conducted on a regional basis and coordinated statewide. See N.J.S.A. 13:1E-2(a) and 2(b)(6). DEP is required to adopt a statewide solid waste management plan. N.J.S.A. 13:1E-6(a)(3). Furthermore, when a county is unable to locate sufficient disposal facilities within its own borders, it is required to enter into an agreement with another county to dispose of part or all of its solid waste in the other county. N.J.S.A. 13:1E-21(b)(3). DEP alleges that each of the counties has failed to enter into interdistrict agreements, which could be entered into between two or more of the defendants. DEP also alleges that the combination of planning failures of the defendant counties is contributing to a statewide solid waste crisis. Accordingly, the alleged planning failures of all defendants may be appropriately viewed as "so causally related or closely allied or related in character ... as to constitute components or links in the same evolving complex of events," MacNeil v. Klein, supra, 141 N.J. Super. at 408, quoting 2 Schnitzer & Wildstein, N.J. Rules Service 1046 (1954), and hence to satisfy the first requirement for permissive joinder.
As for the second requirement, there is no real dispute that the allegations against the six defendants raise common questions of law and fact. One such issue is the threshold legal *420 question, discussed in Part II of this opinion, of whether DEP may maintain a suit for injunctive relief and penalties rather than exercising its own administrative powers when a county fails to discharge its planning responsibilities under the Act.
Thus, both requirements for permissive joinder have been met.
Mercer and Hunterdon counties also urge that the venue provisions of R. 4:3-2(a)(2) preclude this court from hearing DEP's claims against them. This rule provides that in any action brought against a county which does not involve real property, venue shall be laid "in the county in which the cause of action arose." The moving parties acknowledge that DEP's cause of action against Middlesex County arose in Middlesex. However, they urge that DEP's cause of action against each of them is separate from that against Middlesex and arose in their own respective counties. The foundation for this argument is that R. 4:3-2(a)(2) refers to "cause of action" in the singular, without recognizing that more than one cause of action may be stated in the same complaint. The issue presented is whether the venue requirement of R. 4:3-2(a)(2) should be read to preclude joinder of claims against several counties, which qualify for permissive joinder under R. 4:29-1(a), unless all the causes of action stated in the complaint arise in the same county.
Venue requirements are not jurisdictional. Doyley v. Schroeter, 191 N.J. Super. 120, 123 (Law Div. 1983). Rather, they are rules of practice designed to place litigation at a location convenient to parties and witnesses. Id. at 126-128. Accordingly, an action may be transferred from one venue to another where the convenience of parties and witnesses is not served by strict application of the venue rules. R. 4:3-3(a)(3); see also Diodato v. Camden Cty. Park Comm'n, 136 N.J. Super. 324, 327-328 (App.Div. 1975); Engel v. Gosper, 71 N.J. Super. 573 (Law Div. 1962). Our Supreme Court also has made exceptions to normal venue requirements for efficiency and *421 consistency in the handling of complex public litigation. See, e.g., Southern Burlington Cty. N.A.A.C.P. v. Mount Laurel Tp., 92 N.J. 158, 216 (1983) (all Mount Laurel litigation assigned to three judges sitting in multi-county districts). In those circumstances, the same policies of efficient judicial management that underlie the permissive joinder rule have taken precedence over the venue rules. Moreover, separate actions venued in different counties may be consolidated in a single court if all claims involve "a common question of law or fact arising out of the same transaction or series of transactions." R. 4:38-1(a). This means that DEP could have filed separate actions against each of the counties and then moved to consolidate. Therefore, a reading of R. 4:3-2(a)(2) that permits multiple counties to be joined initially in a single action has the virtue of avoiding such a two-step process in order to place related claims before the same court.
One reading of R. 4:3-2(a)(2) that permits the maintenance of a single lawsuit against multiple counties is to view all claims which qualify for permissive joinder under R. 4:29-1(a) as stating a single "cause of action." Alternatively, if the complaint is read to state separate causes of action against the different counties, R. 4:3-2(a)(2) may be considered satisfied if any of the causes of action arose in the county in which the complaint is filed. Either construction serves to harmonize the permissive joinder and venue rules and avoids the fragmentation of litigation which, in the interests of sound judicial administration, should be tried before a single court. See Engel v. Gosper, supra. Therefore, the applicable venue rule does not preclude DEP from maintaining its claims against the six defendant counties before the same court.

II
The Solid Waste Management Act, as amended in 1975 (L. 1975, c. 326), confers pervasive authority and responsibility upon DEP to plan for solid waste disposal. N.J.S.A. 13:1E-1 to *422 37. See generally, A.A. Mastrangelo, Inc. v. Dep't of Environmental Protection, 90 N.J. 666 (1982). The Act designates every county and the Hackensack Meadowlands District as solid waste management districts. N.J.S.A. 13:1E-19. The initial responsibility for preparation of plans for solid waste disposal rests with county boards of freeholders and the Hackensack Meadowlands Development Commission (HMDC). N.J.S.A. 13:1E-23. However, all district plans must be prepared in accordance with the statewide plan promulgated by DEP and must be reviewed by the Commissioner of DEP. N.J.S.A. 13:1E-24.
The procedures for adoption of district plans and their review by DEP are set forth in great detail in N.J.S.A. 13:1E-20 to 24. These sections set forth precise time periods within which districts must adopt plans and DEP must review those plans. N.J.S.A. 13:1E-20(a)(1), 23(a), 23(g), 23(h), 24(b), 24(e), 24(f). They also prescribe the contents of district plans. N.J.S.A. 13:1E-21. Most important, the Act specifies what DEP may do in the event a district is unwilling or unable to develop a satisfactory plan. One section provides that if any district fails to adopt a plan within a specified time period, DEP shall have the power to adopt a plan for that district. N.J.S.A. 13:1E-23(i); see also N.J.S.A. 13:1E-23(a). Another section provides that if a district concludes there are insufficient suitable disposal sites within its boundaries and is unable to reach an agreement with any other district for disposal within that district, the failure to reach agreement must be certified to DEP. The Commissioner of DEP must then conduct a study to determine the suitable location of solid waste facilities and order the district in which such facilities are located to include them in its plan. N.J.S.A. 13:1E-21(b)(3). Other sections require the Commissioner to determine whether "to approve, modify, or reject" any plan adopted by a district, and if he directs a plan to be replaced or modified and the district fails to do so, "the commissioner shall have the power to adopt and promulgate any modification or *423 replacement he deems necessary with respect to the solid waste management plan...." N.J.S.A. 13:1E-24(f).
The Court reviewed these provisions in A.A. Mastrangelo, Inc. v. Dep't of Environmental Protection, supra, and concluded:
The Act addresses a pronounced need for uniformity and local, regional, and statewide integration in the regulation of solid waste management. It is obvious that "the Legislature intended to vest in the Department great supervisory powers over the critical and urgent need for solid waste disposal." In re Application Combustion Associates, 169 N.J. Super. 305, 316 (App.Div. 1979). [90 N.J. at 687.]
Mercer and Hunterdon counties both adopted solid waste management plans that were approved by DEP. However, DEP now alleges that those plans are inadequate. Mercer allegedly has failed to follow any of the three options for siting a landfill facility permitted by its solid waste management plan  designation of a landfill site within the county, execution of an interdistrict agreement or certification to the Commissioner of a failure to reach an interdistrict agreement. Hunterdon allegedly has failed to amend its plan to identify a substitute facility for High Point Landfill, where its waste had been disposed of pursuant to an interdistrict agreement with Warren County. It also allegedly has failed to designate a site for resource recovery, as DEP directed in its Certification of Approval of the district plan. Both plans also are alleged to lack a number of other necessary elements. However, the Commissioner has not issued any formal determination that either plan fails to comply with the Act, nor has he exercised any of his administrative powers to correct the alleged deficiencies. Rather, he simply wrote letters to these districts (and 13 others) setting forth the alleged inadequacies of their plans and demanding that they enter into consent orders with DEP. When the counties refused to accede to these demands, this suit was filed.
The Commissioner's purported authority for seeking to discharge his responsibilities under the Act by suing for injunctive relief and monetary penalties, rather than exercising his own *424 administrative powers, is contained in N.J.S.A. 13:1E-9 and 10, which authorize the Commissioner to sue for violations of the Act. However, these sections were enacted five years before planning responsibilities were assigned to counties, and their evident objective was to authorize the Commissioner and other enforcement agencies, including county health departments, to seek injunctive relief and/or monetary penalties against solid waste collectors and disposal facilities which operated in violation of the Act. N.J.S.A. 13:1E-9(b) begins as follows:
The commissioner, a local board of health or county health department may institute an action or proceeding in the Superior Court for injunctive and other relief, including the appointment of a receiver for any solid waste collection or disposal facility or operation, which is established or operated in violation of this act, or of any code, rule or regulation promulgated pursuant to this act.
Thus, the subject of the relief authorized by this section is a "solid waste collection or disposal facility or operation" rather than a county acting in the capacity of a solid waste management district.
This conclusion draws further support from the subsections of N.J.S.A. 13:1E-9(b), which set forth the forms of relief, other than injunctions, a court is authorized to award:
(2) Assessment of the violator for the costs of any investigation, inspection, or monitoring survey which led to the establishment of the violation...;
(3) Assessment of the violator for any cost incurred by the State in removing, correcting or terminating the adverse effects upon water and air quality resulting from any violation of any provision of this act or any rule, regulation or condition of approval for which the action under this subsection may have been brought;
(4) Assessment against the violator of compensatory damages for any loss or destruction of wildlife, fish or aquatic life, and for any other actual damages caused by any violation of this act or any rule, regulation or condition of approval established pursuant to this act for which the action under this subsection may have been brought.
The costs of an "investigation, inspection, or monitoring survey," "removing, correcting or terminating the adverse effects upon water and air quality" or "destruction of wildlife, fish or aquatic life" would be incurred only in connection with operation of collection or disposal facilities. Similarly, N.J.S.A. 13:1E-9(c) provides that each day after the Commissioner has *425 directed that a continuing violation be "eliminated" is a separate offense, and N.J.S.A. 13:1E-9(d) permits a rebate of up to 90% when a violation has been "eliminated or removed." This language clearly refers to operation of a collection or disposal system in violation of the Act rather than a solid waste management district's failure to properly carry out its planning responsibilities.
In support of its interpretation of N.J.S.A. 13:1E-9 and 10, DEP relies upon the fact that when the Legislature amended the Act in 1975 to impose planning responsibilities upon counties and the HMDC, it added a provision that "the State and any of its political subdivisions, public agencies and public authorities shall be deemed a person within the meaning of this act." L. 1975, c. 326, § 6; N.J.S.A. 13:1E-5(b). DEP argues that since N.J.S.A. 13:1E-9(e) and 10 refer to any "person" who violates the Act, the purpose of this amendment must have been to subject government agencies to these enforcement provisions. However, the issue is not whether a governmental agency is subject to suit, but rather whether a planning district may be sued for failing to adopt an adequate plan. The Act contemplates that public agencies may be operators of collection and disposal facilities. See, e.g., N.J.S.A. 13:1E-2(b)(4); 3(i); 21(c); 22; 29. The Legislature apparently had a concern that public agencies operating collection or disposal facilities might be held exempt from the registration and other regulatory requirements of the Act, since the term "person" in other regulatory statutes has been construed not to encompass government entities. See, e.g., Jersey City Incinerator Auth. v. Dep't of Public Utilities, 146 N.J. Super. 243, 254 (App.Div. 1976); Leonard v. State Highway Dep't of N.J., 29 N.J. Super. 188, 196 (App.Div. 1954). Accordingly, it added a sentence to N.J.S.A. 13:1E-5(b), which imposes the obligation upon any person engaged in waste collection or disposal to obtain DEP's approval, explicitly stating that a public agency shall be deemed a person under the Act. However, there is nothing either in the language of this amendment to N.J.S.A. 13:1E-5(b) or its location *426 within the Act to support DEP's contention that it was intended to indirectly authorize DEP to file suit against a district which has failed to properly discharge its planning obligations.
Another circumstance which militates against DEP's construction of N.J.S.A. 13:1E-9 and 10 is that it would be highly unusual to impose monetary penalties upon a government agency for failing to properly carry out its regulatory responsibilities. Government agencies are now commonly subject to monetary liability for a variety of wrongs committed by their employees, such as negligent operation of automobiles, employment discrimination and even pollution caused by operation of government facilities. However, this court is unaware of any circumstance where an agency with regulatory responsibilities is subject to penalties or other monetary liability for failing to properly carry out those responsibilities. Indeed, the New Jersey Tort Claims Act provides absolute immunity for "administrative action or inaction of a legislative" nature, N.J.S.A. 59:2-3(b), which is the type of governmental action involved in adoption of a solid waste management plan. Therefore, if the Legislature had intended to take the unusual step of subjecting counties to monetary penalties for failing to properly carry out regulatory responsibilities, it would have said so in clear and unmistakable language.[2]
DEP also contends that the planning obligations imposed upon the planning districts under the Act are mandatory whereas those of DEP are discretionary. It concludes that the planning obligations of the districts may be enforced by mandatory injunction, whereas DEP has the option either to exercise its planning powers or to sue the districts to enforce theirs. However, the premise of the argument is incorrect. The Act is *427 ambiguous in its characterization of a district's planning obligations, describing them in mandatory terms in certain sections and in discretionary terms in others. On the one hand, N.J.S.A. 13:1E-20(a)(1) states that each district "shall develop and formulate ... a solid waste management plan," and N.J.S.A. 13:1E-23(h) states that every district "shall adopt a solid waste management plan in its entirety." On the other hand, N.J.S.A. 13:1E-2(b)(2) states the legislative policy to "provide each county ... with the power ... to develop and implement a comprehensive solid waste management plan...." Similarly, N.J.S.A. 13:1E-23(a), describing the procedures for adoption of a plan, simply states that districts "shall have the power ... to adopt a solid waste management plan...." This same subsection states that if a district fails to exercise its planning powers within a specified time, "the department shall have the power to develop, formulate and ... adopt and promulgate a solid waste management plan...." In other words, this pivotal subsection describes the basic planning obligations of the districts and DEP in the same discretionary language. Furthermore, while DEP's planning obligations are generally described in discretionary terms, the subsection relating to the failure of two districts to enter into an interdistrict agreement for siting a solid waste facility states that the Commissioner "shall" require a district to locate the facility within its boundaries. N.J.S.A. 13:1E-21(b)(3). Therefore, the Legislature's use of mandatory or discretionary words is of little help in understanding the scope of obligations imposed upon either planning districts or DEP. See Exxon Corp. v. Hunt, 97 N.J. 526, 534-535 (1984).
In any event, the real question is not whether the Legislature viewed the respective obligations of the planning districts and DEP as mandatory or discretionary but rather what it contemplated would occur if a district failed to adopt a satisfactory plan. When the Legislature enacted the 1975 amendments to the Act there was a perceived crisis in solid waste disposal in New Jersey, which had been noted by the courts, see, e.g., *428 Southern Ocean Landfill Inc. v. Ocean Tp., 64 N.J. 190, 193 (1974), and which is reflected in the legislative findings. N.J.S.A. 13:1E-2(a). The Legislature responded to the crisis in light of two policies: first, the desire to preserve the home rule tradition in this State to the extent possible, and second, the realization that an effective solution to the solid waste crisis would require regional and statewide planning. See N.J.S.A. 13:1E-2(a) and (b)(1). Accordingly, while essentially eliminating any municipal role in solid waste planning [but see N.J.S.A. 13:1E-2(b)(3)], the Act conferred power upon counties, acting singly or in combination, to develop solid waste management plans. N.J.S.A. 13:1E-2(b)(2), 20(a)(2). However, to assure that planning would be consistent statewide, it required DEP to adopt a statewide solid waste management plan, N.J.S.A. 13:1E-6(a)(3), with which all district plans must conform. See N.J.S.A. 13:1E-2(b)(6). The Legislature also contemplated that certain districts might be unwilling or unable to develop satisfactory solid waste management plans. See id. Consequently, DEP was given "the authority ... to fill any gap caused by a county's inaction or noncompliance with the Department's statewide scheme." In re Combustion Equipment Assocs., Inc., 169 N.J. Super. 305, 310 (App.Div. 1979). That authority may be exercised when a district either fails to adopt any plan at all, N.J.S.A. 13:1E-23(a) and (i), or adopts a plan which DEP concludes is inadequate. N.J.S.A. 13:1E-24(f). However, nothing in the Act suggests that the Legislature contemplated time-consuming litigation as an alternative to DEP's exercise of its own regulatory powers when a district is unwilling or unable to develop a satisfactory plan.
The conclusion that the exclusive remedy when a county fails to discharge its planning responsibilities under the Act is for the DEP to exercise its own planning powers is also supported by the testimony of the sponsor, Senator Matthew Feldman, at the legislative hearings preceding enactment of the 1975 amendments:
[W]hat happens if local disagreements interfere with the initiation or implementation of a plan? Or as another example, what happens when a county, after *429 making a sincere effort to find a solution to its waste problems within its own boundaries is unable to do so and must rely on its neighbor for a landfill site or other type of facility possibly in the face of objection from the neighboring county? It is clear that state government must be in a position to assist the counties in resolving differences, to arbitrate disputes, to work out regional solutions and to perform the necessary work when counties fail to discharge their responsibilities. S. 624 provides for those duties. [Solid Waste Management: Hearings on S. 624 Before Senate Committees on Energy, Agriculture and Environment and County and Municipal Government 6 (1974); emphasis supplied.]
A similar view of the DEP's role under the Act was expressed by its representative at the legislative hearing:
If a district fails to act the State must formulate, adopt and implement a plan for that district. [Statement of Richard D. Goodenough, id. at 16-17.]
The Supreme Court has pointed out that every canon of statutory construction is subordinate to the judiciary's obligation "to make sense out of the legislation, so far as text and context may allow." Clifton v. Zweir, 36 N.J. 309, 323 (1962), quoting Llewellyn, The Common Law Tradition: Deciding Appeals 529 (1960); accord Exxon Corp. v. Hunt, supra. In establishing a comprehensive framework for solid waste management planning through the 1975 amendments, the Legislature specifically addressed what would happen if counties were unwilling or unable to develop adequate solid waste management plans including, in particular, the siting of disposal facilities. It provided that the responsibility would then be assumed by DEP. It also spelled out the specific circumstances that would trigger the assumption of these responsibilities and the procedures to be followed. If the Legislature had intended that DEP could resort to the courts as an alternative to the exercise of its own administrative powers, it would have said so directly. In addition, it would have spelled out in detail what remedial powers the courts might exercise if a district failed to submit a satisfactory plan at the conclusion of litigation. Since the Act is silent in these respects, it must be concluded that DEP's exercise of its own administrative powers is the exclusive remedy when a district fails to adopt a satisfactory plan.
Consequently, insofar as the complaint seeks a declaration that the solid waste management plans of Mercer and Hunterdon *430 violate the Act and a direction that amendments to existing plans be adopted and monetary penalties imposed, a judgment of dismissal will be entered in the counties' favor.

III
There is one paragraph of the complaint against Mercer that does not allege a deficiency in its plan but rather a failure by Mercer to carry out operational responsibilities undertaken by the county itself in its approved plan. This paragraph alleges that Mercer's plan designates the Trenton Freightyards as the site for a resource recovery facility but that Mercer has failed to proceed with construction of that facility. Therefore, DEP seeks an order compelling Mercer to comply with this part of its own plan.
The sections of the Act discussed previously set forth in detail the required components of a solid waste management plan and the procedures that must be followed in adopting a plan. The Act also indicates that the responsibility for implementing an approved plan rests exclusively with the planning districts. Regardless of whether a plan has been adopted by a district or by DEP, the Act provides that the district "shall proceed ... to implement" the plan. N.J.S.A. 13:1E-24(c), (f). However, it is silent with respect to the mechanism for enforcement if a district fails to comply with its obligations under an approved plan. The Act contains no express authorization for DEP either to assume responsibility itself for implementing a plan[3] or to compel a district to fulfill its obligations under a plan. The question is whether this leaves DEP without any power to enforce compliance with an approved plan.
*431 There is authority for the conclusion that an agency with general regulatory authority may seek injunctive relief in the courts to enforce its orders even without express legislative authorization. See Middlesex Cty. Bd. of Taxation v. Sayreville, 133 N.J. Super. 41 (App.Div. 1975); Essex Cty. Bd. of Taxation v. Belleville, 92 N.J. Super. 338 (Law Div. 1966), aff'd 95 N.J. Super. 327 (App.Div. 1967). In any event, it is unnecessary to explore that point further since DEP's general enabling legislation authorizes it to "enforce the State... waste ... disposal laws, rules and regulations," N.J.S.A. 13:1D-9(n), and "to seek and obtain injunctive relief," N.J.S.A. 13:1D-9(e). Such a grant of authority to seek injunctive relief should be broadly construed. See Pfaus v. Palermo, 97 N.J. Super. 4, 8 (App.Div. 1967). Accordingly, N.J.S.A. 13:1D-9 should be construed to authorize DEP to seek a mandatory injunction compelling a district to comply with its own approved solid waste plan.
There are various provisions of the Solid Waste Management Act which provide further support for the conclusion that DEP may resort to the courts to enforce the provisions of an approved plan. The Act confers power upon DEP "to supervise all solid waste disposal facilities." N.J.S.A. 13:1E-4(a); see also N.J.S.A. 13:1E-2(b)(6). In discharging this statutory responsibility it is required to adopt "rules and regulations concerning ... solid waste disposal activities." N.J.S.A. 13:1E-6(a)(2). A resource recovery facility, such as that which Mercer is obligated to establish, is a solid waste disposal facility, N.J.S.A. 13:1E-3, and hence encompassed within these general statutory powers. Furthermore, the Act explicitly empowers DEP to "order any district ... to plan for the construction of resource recovery facilities" and "to specify what process shall *432 be utilized therein." N.J.S.A. 13:1E-6(b)(1)(a), (b). Therefore, unless it can seek an injunction to compel a district to establish a resource recovery facility which an approved plan obligates it to establish, DEP would be in the anomolous position of being able to order a district to take action but lacking the power to enforce the order if it is disobeyed. To avoid such consequences, it is appropriate to read N.J.S.A. 13:1D-9 to confer authority upon DEP to fulfill its broad statutory mission under the Act by seeking appropriate injunctive relief for the enforcement of obligations under an approved plan.
For these reasons summary judgment will be granted in favor of Hunterdon County, and partial summary judgment will be granted in favor of Mercer County dismissing the complaint except insofar as it seeks to mandate construction of the resource recovery facility which Mercer is obligated to construct under its own approved plan.
NOTES
[1] DEP reached a settlement with Monmouth after argument on the motions that are the subject of this opinion. Third party complaints have been filed against eight other counties and the Hackensack Meadowlands Development Commission. Several of the third party defendants have secured dismissals and the remainder are not directly involved in the pending motions.
[2] If DEP were correct in its reading of the Act, that agency itself could be held liable for payment of monetary penalties to a county if it were shown, as alleged by several defendants, that it has failed to fulfill its statutory responsibilities, since a county health department may seek penalties under N.J.S.A. 13:1E-9(c) and "the State" is a "person" under N.J.S.A. 13:1E-5(b).
[3] Although there is a statement of legislative policy that DEP shall have the power "to develop and implement such a plan where none is approved or forthcoming for any solid waste management district", no operative section of the Act, as amended in 1975, reflects this stated policy. N.J.S.A. 13:1E-2(b)(6); emphasis supplied. Chapter 38 of the Laws of 1985 authorizes DEP to assume the administration within a county of a newly established tax fund for resource recovery if it determines that the county has failed to fulfill its solid waste planning responsibilities. However, it is unclear whether this new provision is operative upon a county's failure to implement a plan, as well as its failure to adopt an adequate plan, and in any event it is of no aid in construing the 1975 amendments.