ROTHSTADT, J.A.D.
*975 *169 In this appeal, we are asked to determine whether the Law Division properly denied plaintiff's motion for class certification under Rule 4:32-1(b)(2) where plaintiff's claims were similar to those considered by the New Jersey Supreme Court in Dugan v. TGI Fridays, Inc., 231 N.J. 24, 171 A.3d 620 (2017). In Dugan, the Court held that class certification under Rule 4:32-1(b)(3) was not appropriate based on a "price-inflation" theory. 231 N.J. at 34, 171 A.3d 620. The Dugan plaintiffs argued that TGI Friday's, Inc. (TGIF), the restaurant chain, violated the Consumer Fraud Act (CFA), N.J.S.A. 56:8-2.2 and 2.5, and the Truth in Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18, by failing to disclose the prices it charged for beverages on its menus. Ibid. They claimed that TGIF was able to charge each member of the class, across the board, $1.72 more than the "fair" or "reasonable" prices that the market would bear if the prices had been disclosed on the menu. Ibid. The Court recognized this as a "price-inflation" theory of damages and held that (b)(3) class certification was not appropriate under the CFA or the TCCWNA
*170 because each class member's claim was dependent upon their individual dining experiences and, under the TCCWNA, the Legislature did not intend for the Act to impose substantial financial penalties for violations.
We conclude that Dugan's holding did not require the denial of plaintiff's motion for (b)(2) certification in this case because the Court's concerns in Dugan were not relevant to plaintiff's application for (b)(2) certification. To hold otherwise, as suggested by our dissenting colleague, will not only "make it more difficult for a class of ... defrauded consumers to act collectively in pursuit of a common remedy against a corporate wrongdoer," Dugan, 231 N.J. at 75, 171 A.3d 620 (Albin, J., dissenting), but also it will in fact slam the courthouse doors shut on them, rather than "open[ing] the ... doors for those who cannot enter alone." Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 104, 922 A.2d 710 (2007).
We granted plaintiff Robert Cameron individually, and on behalf of all others similarly situated, leave to appeal from the Law Division's order denying his motion for (b)(2) class certification. Plaintiff's complaint alleges that defendant South Jersey Pubs Inc., doing business as TGIF, violated the CFA and the TCCWNA by failing to list beverage prices on its menu. Plaintiff seeks monetary damages for himself as well as injunctive and declaratory relief for all individuals who received a menu and ordered a beverage from a menu without a price in one of defendant's two establishments during a specific time period. He specifically seeks permanent injunctive relief directing defendant to include beverage prices on its menus and a declaration that the failure to do so is an unlawful commercial practice under the CFA and a violation of the TCCWNA. On appeal, plaintiff argues that the motion judge erred in denying his motion for class certification because he satisfied the requirements for (b)(2) class certification. We agree and reverse the denial of (b)(2) class certification.
*976 I.
We glean the following facts from the motion record. Defendant is a franchisee of TGIF and owns and operates two TGIF restaurants, *171 one in Toms River and the other in Manahawkin. On August 1, 2012, plaintiff went to defendant's restaurant in Toms River.[1] He was given a menu, initially ordered a water, then his meal, and a beer, and then added a soda. He believed that all of this, plus tip, would cost about $20. After finishing his meal, plaintiff was presented with the bill and was shocked to see that he had been billed over "$5[ ] for a mass produced beer, and ... close to ... $3[ ] ... for a soda." On his way out, plaintiff looked at a menu and noticed that the drink prices were not listed. Plaintiff stated that he never would have ordered the drinks if the prices were listed.
Thereafter, plaintiff filed his complaint.[2] On December 24, 2015, plaintiff filed an initial motion for class certification, but withdrew it on March 21, 2016. On September 13, 2017, he renewed his motion for class certification under Rules 4:32-1(b)(2) or (b)(3). Plaintiff sought a class of "[a]ll customers of ... [defendant's] restaurants who purchased items from [a] menu that did not have a disclosed price" during the period from August 1, 2006 through the present date.[3] However, on October 5, 2017, a day after the Supreme Court issued its opinion in Dugan, plaintiff withdrew his motion for class certification under (b)(3) for damages and relied solely on class certification under (b)(2) for injunctive relief.
While his renewed motion was pending, plaintiff filed an amended complaint in November 2017. In the amended complaint, plaintiff alleged that defendant violated the CFA and the TCCWNA
*172 based on its failure to list certain beverage prices on its menu. According to plaintiff, defendant's actions were contrary to N.J.S.A. 56:8-2.2 and N.J.S.A. 56:8-2.5.[4] Plaintiff also asserted claims for breach of contract and unjust enrichment. The complaint demanded monetary damages for plaintiff and a "proposed class ... of all customers of ... [defendant's] restaurants who purchased items from the menu that did not have a disclosed price[,]" and declaratory and injunctive relief on behalf of himself and the class. Plaintiff specifically sought a declaration that "[d]efendant's practice ... [was] unlawful" and an injunction to prevent "[d]efendant from continuing to offer beverages for sale without written price *977 disclosures." Defendant filed an answer denying the allegations in the complaint.
According to plaintiff, despite the age of the case, no discovery had been completed prior to the class certification motion being considered by the court. However, plaintiff relied upon discovery obtained in Dugan to support his complaint's factual contentions. Citing to that discovery, plaintiff alleged that TGIF intentionally developed a plan to not disclose beverage prices on its restaurants' menus as a form of "menu engineering," after it conducted various market studies that concluded by not disclosing prices, it could charge higher prices to its patrons.[5] Relying upon a deposition *173 taken in Dugan from one of defendant's officers in this case, plaintiff alleged that defendant followed TGIF's procedure from 2008 through 2016 and he argued that defendant stopped doing so only to avoid being held liable in this litigation.
On April 27, 2018, the motion judge heard argument and afterward denied plaintiff's (b)(2) class certification motion, placing his reasons on the record that day. Initially, the judge opined that the CFA "violations here [were] not clearly established[,] which would warrant ... injunctive relief," but that was "not dispositive." He also observed that the CFA was not "all about" a litigant being able to pursue "comprehensive injunctive proceedings brought on behalf of thousands ... of individuals who are now being told they don't have to worry about whether they've been damaged ...." He also found that the purported class was "a large group of people.... [that was] hard to determine ...." According to the judge, injunctive relief was not necessary because it was "future oriented" and there was no "showing that any individual or members of the class would ... suffer future ... grievances.... [as] the whole purpose of an injunction is to avoid damages."
Addressing the purported class, the judge found that it consisted of "thousands of ... [people] who were just simply identified if *174 [they] showed up [at defendant's establishment,]" so the class was "generalized." He then turned back to the CFA and stated that in determining class certification under (b)(2), "you don't have to worry about predominance," as required by (b)(3), but found that "cohesiveness require[d] th[e] [c]ourt to search through the record ... [and] the potential claims to determine whether ... the interests of the individuals are so disparate and so lack[ing] of cohesion that it would make it inappropriate for a class action." *978 Applying that standard, the judge concluded that there was no evidence of cohesiveness, especially here "where one consumer can go off and get ... injunct[ive relief] without having some kind of proof of ascertainable loss as it applies to the remainder of the group." The judge distinguished this case from Laufer v. U.S. Life Ins. Co., 385 N.J. Super. 172, 188, 896 A.2d 1101 (App. Div. 2006), in which we held, in part, that only a putative class plaintiff needs to demonstrate ascertainable loss under the CFA to maintain a (b)(2) class action for purported violations of the CFA. The judge stated that although the putative class plaintiff in Laufer was only required to demonstrate ascertainable loss, "ascertainable loss [was] evident in the remainder of the group."
Relying on the Court's opinion in Dugan, the judge concluded that "if damage claims can't be subject to class action, then ... injunctive [relief] can't be subject to class action because injunctive [relief] is secondary to the damage claims in the consumer protection world unless you're the Attorney General. Then you don't have to prove damages."
The judge entered an order denying class certification on April 30, 2018. We granted plaintiff leave to appeal and later issued a stay pending appeal.
II.
On appeal, plaintiff contends that the motion judge erred and abused his discretion in not certifying the class based upon the judge's consideration of whether plaintiff is entitled to the relief demanded in his complaint, "the ultimate merits of the case," and *175 the judge's perception that injunctive relief was not necessary because defendant alleged it voluntarily agreed to disclose beverage prices on its menus going forward. Moreover, plaintiff asserts that the judge incorrectly believed that in order to certify the class, plaintiff was bound to come forward with evidence that all putative class members sustained an ascertainable loss under the CFA. Finally, plaintiff argues that the motion judge "conflate[ed] cohesion and predominance."
Defendant contends that the motion judge correctly denied class certification. The thrust of defendant's response is that proposed class members may have decided to purchase beverages from defendant on any given date for reasons totally unrelated to "the lack of menu pricing." According to defendant, "even if one assumes that patrons viewed the same menus, there is simply no way of knowing which individuals ordered beverages without knowing the prices in advance, and what information about prices they had even in the absence of menu pricing." Although not argued before the motion judge, it further argues to us that the individual nature of "[e]ach proposed class member's dining experience lacked the typicality and commonality necessary for class certification under [Rule ] 4:32-1(a) due to the unlimited variations in customers' interactions with servers regrading beverage purchases." Citing to Dugan, defendant contends that the Court found that "there were too many individual variants among how individual patrons ordered beverages to find that 'common questions of law or fact' were 'predominant.' " In addition, defendant avers that in any event, plaintiff was not entitled to injunctive relief once he abandoned his claim for monetary damages.
We review a trial court's order granting or denying class certification for an abuse of discretion. Dugan, 231 N.J. at 50, 171 A.3d 620. In determining whether the trial court has abused its discretion, we " 'must ascertain whether the trial court has followed' the class action standard set forth in Rule 4:32-1." Ibid. (quoting *979 Lee v. Carter-Reed Co., LLC, 203 N.J. 496, 506, 4 A.3d 561 (2010) ). "Our role in this case is to review the trial courts' class *176 certification decisions, not to act as a factfinder with respect to plaintiffs' substantive claims." Id. at 55 n.8, 171 A.3d 620.
Applying that standard, we conclude that the motion judge mistakenly exercised his discretion by not correctly applying the requirements for (b)(2) certification of a class. The judge improperly held that an individual could not pursue injunctive relief under the CFA and determined cohesiveness by focusing upon the possible disparity between class members' dining experiences rather than whether the entire class could be afforded a remedy through a single injunction that would insure defendant's continued compliance with the law, if warranted. In our view, the facts of this case give rise to exactly the type of claims that (b)(2) class certification was intended to address.
A.
We begin our review by observing that certifying a "class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.' " Iliadis, 191 N.J. at 103, 922 A.2d 710 (quoting Califano v. Yamasaki, 442 U.S. 682, 700-01, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979) ). "[T]he class action is a device that allows 'an otherwise vulnerable class' or diverse individuals with small claims access to the courthouse," Lee, 203 N.J. at 518, 4 A.3d 561 (quoting Iliadis, 191 N.J. at 120, 922 A.2d 710 ), and thus, it " 'should be liberally construed.' " Dugan, 231 N.J. at 46-47, 171 A.3d 620 (quoting Lee, 203 N.J. at 518, 4 A.3d 561 ).
"[I]n the context of consumer transactions, 'class actions should be liberally allowed ... under circumstances that would make individual actions uneconomical to pursue.' " Daniels v. Hollister Co., 440 N.J. Super. 359, 363, 113 A.3d 796 (App. Div. 2015) (quoting Varacallo v. Massachusetts Mut. Life Ins. Co., 332 N.J. Super. 31, 45, 752 A.2d 807 (App. Div. 2000) ). "In short, as the Court made clear in Iliadis, 'a class action "should lie unless it is clearly infeasible." ' " Ibid. (quoting Iliadis, 191 N.J. at 103, 922 A.2d 710 ).
*177 Our courts have described "the class-action device's ' "historic mission" ' [as] caring for ' "the smaller guy." ' " Id. at 364, 113 A.3d 796 (quoting Iliadis, 191 N.J. at 104, 922 A.2d 710 ). A class action serves "numerous practical purposes, including judicial economy, cost-effectiveness, convenience, consistent treatment of class members, protection of defendants from inconsistent obligations, and allocation of litigation costs among numerous, similarly-situated litigants." Id. at 363, 113 A.3d 796 (quoting Iliadis, 191 N.J. at 104, 922 A.2d 710 ).
Significantly, it levels the "playing field" by " 'equaliz[ing] the claimants' ability to zealously advocate their positions. That equalization principle "remedies the incentive problem facing litigants who seek only a small recovery." [T]he class action's equalization function opens the courthouse doors for those who cannot enter alone.' " Id. at 363-64, 113 A.3d 796 (second alteration in original) (quoting Iliadis, 191 N.J. at 104, 922 A.2d 710 ). "The class-action device was created not only to allow compensation for such small wrongs but also to deter future wrongdoing in the marketplace." Id. at 371-72, 113 A.3d 796.
Rule 4:32-2(a) requires that a "court shall, at any early practicable time, determine by order whether to certify the action as a class action." A plaintiff bears the burden of establishing class status. Iliadis, 191 N.J. at 106, 922 A.2d 710. "[C]lass certification should not be denied based on the merits of a complaint, [but] some preliminary analysis is required.
*980 Carroll v. Cellco P'ship, 313 N.J. Super. 488, 495, 713 A.2d 509 (App. Div. 1998).
When considering a motion by plaintiff for class certification, a court is required" to examine " 'the claims, defenses, relevant facts, and applicable substantive law.' " Dugan, 231 N.J. at 49-50, 171 A.3d 620 (quoting Iliadis, 191 N.J. at 107, 922 A.2d 710 ). It "must 'accept as true all of the allegations in the complaint,' and consider the remaining pleadings, discovery ..., and any other pertinent evidence in a light favorable to [the] plaintiff." Lee, 203 N.J. at 505, 4 A.3d 561 (first quoting *178 Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., 192 N.J. 372, 376, 929 A.2d 1076 (2007) ; then citing Iliadis, 191 N.J. at 96, 922 A.2d 710 ).
The court "must undertake a 'rigorous analysis' to determine if the Rule's requirements have been satisfied." Dugan, 231 N.J. at 49, 171 A.3d 620 (citing Iliadis, 191 N.J. at 106-07, 922 A.2d 710 ). "Although class certification does not occasion an examination of the dispute's merits, a cursory review of the pleadings is nonetheless insufficient." Iliadis, 191 N.J. at 107, 922 A.2d 710 (citations omitted). In other words, a court considering a request for class certification must pierce the pleadings. Ibid. Nevertheless, at this stage, a court must "liberally indulge the allegations of the complaint [and] 'liberally construe[ ]' Rule 4:32-1 in favor of class certification" to achieve the goal that "a class action 'should lie unless it is clearly infeasible.' " Daniels, 440 N.J. Super. at 363-64, 113 A.3d 796 (second alteration in original) (quoting Iliadis, 191 N.J. at 103, 922 A.2d 710 ).
1.
To certify a class action, the putative class plaintiff must first establish the requirements in Rule 4:32-1(a). This Rule states:
(1) the class is so numerous that joiner of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
[R. 4:32-1(a).]
These requirements are commonly referred to as "numerosity, commonality, typicality and adequacy of representation." Dugan, 231 N.J. at 47, 171 A.3d 620 (quoting Lee, 203 N.J. at 519, 4 A.3d 561 ). Once the named plaintiff has established the requirements in Rule 4:32-1(a)(1), he or she must also satisfy either Rule 4:32-1(b)(1),[6] (2), or (3).
*179 Although defendant here argues to us that plaintiff failed to satisfy the requirements of Rule 4:32-1(a)(1), plaintiff's alleged failure to do so was not argued before the motion judge and for that reason, the judge never addressed the contention. Because the issue was not addressed in the motion, we have no reason to consider it now. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973). Even if we did, we find no merit to defendant's contention as plaintiff's purported class met all of the requirements under Rule 4:32-1(a).
Here, it is obvious that the putative class meets the Rule's requirements. The members of the class are far too numerous for individual joinder.
*981 The common issue of law among all class members is that [defendant] does not list its beverage prices in violation of N.J.S.A. 56:8-2.5. The common issue of fact is that all members of the class suffer from [defendant's alleged] unlawful practice of not listing beverage prices. The loss suffered by patrons resulting from [the alleged] violation of the CFA is dispersed over the entire class of beverage purchasers, with individual patrons incurring greater or lesser losses.
[ Dugan, 231 N.J. at 82, 171 A.3d 620 (Albin, J. dissenting).]
The class members' claims " 'arise from the same events, practice, or conduct, and are based on the same legal theory, as those of other class members ....' " Laufer, 385 N.J. Super. at 180-81, 896 A.2d 1101 (citation omitted). The unlawful conduct alleged here is a violation of the CFA and the TCCWNA arising from the failure to list beverage prices on menus given to plaintiff and the putative class members. Finally, plaintiff can adequately represent the class even if his "interests" are not "identical" to all class members, as he does " 'not have interests antagonistic to those of the class.' " Id. at 182, 896 A.2d 1101 (quoting Delgozzo v. Kenny, 266 N.J. Super. 169, 188, 628 A.2d 1080 (App. Div. 1993) ).
2.
The dispute here focused on only whether plaintiff, seeking only injunctive relief, was entitled to (b)(2) class certification, which is different than the (b)(3) certification considered by the Court in Dugan, where the claim was for damages and civil penalties.
*180 "Though classes certified under ... (b)(3) and ... (b)(2) all proceed as 'class actions,' the two subsections actually create two remarkably different litigation devices." Shelton v. Bledsoe, 775 F.3d 554, 560 (3d Cir. 2015).[7]
Under (b)(3),
[i]f th[e] initial requirements [of Rule 4:32-1(a) ] are satisfied, the court then considers whether "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."
[ Pisack v. B & C Towing, Inc., 455 N.J. Super. 225, 250, 188 A.3d 1088 (App. Div.), leave to app'l granted, 235 N.J. 477, 196 A.3d 980 (2018) and 236 N.J. 24, 197 A.3d 658 (2018) (quoting R. 4:32-1(b)(3)).]
"Predominance exists if 'the proposed class is "sufficiently cohesive to warrant adjudication by representation." ' " Ibid. (quoting Dugan, 231 N.J. at 48, 171 A.3d 620 ). "To establish predominance, ... a 'plaintiff does not have to show that there is an "absence of individual issues or that the common issues dispose of the entire dispute," or "that all issues [are] identical among class members or that each class member [is] affected in precisely the same manner." ' " Ibid. (alterations in original) (quoting Lee, 203 N.J. at 520, 4 A.3d 561 ).
Proof of predominance under (b)(3) is not a requirement for (b)(2) certification. Gates v. Rohm & Haas Co., 655 F.3d 255, 263-64 (3d Cir. 2011).[8] Under *982 (b)(2), class certification is *181 warranted if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." R. 4:32-1(b)(2). Certification under (b)(2) is appropriate where one injunction can remedy the harmful conduct. See MacNeil v. Klein, 141 N.J. Super. 394, 412-13, 358 A.2d 488 (App. Div. 1976) (observing that (b)(2) class certification would be inappropriate to remedy adverse but disparate jail conditions in different counties). Whether (b)(2) certification is appropriate therefore "turns on the precise nature of the remedy sought." Goasdone v. Am. Cyanamid Corp., 354 N.J. Super. 519, 532, 808 A.2d 159 (Law Div. 2002). See also Shelton, 775 F. 3d at 561.
Section (b)(2) applies "when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 360, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011).
"[T]he key to the (b)(2) class is the 'indivisible nature of the injunctive or declaratory remedy warranted-the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.' " Shelton, 775 F. 3d at 561 (quoting Wal-Mart, 564 U.S. at 360, 131 S.Ct. 2541 ). The issue at the point of deciding class certification is not whether plaintiff has proven his or the class *182 members' entitlement to injunctive relief, see Sheppard v. Twp. of Frankford, 261 N.J. Super. 5, 10, 617 A.2d 666 (App. Div. 1992) (stating that non-exclusive factors, if established, would warrant a permanent injunction), but rather whether the relief, if warranted, would provide a remedy for the entire class.
The mere fact that a defendant has allegedly voluntarily desisted from the challenged conduct is not a reason for denying an injunction or therefore (b)(2) certification. A "tardy attempt of defendant to lend an appearance of observance of plaintiff's rights will avail it nothing. An injunction may issue 'to prevent an anticipated or threatened injury, either to protect against a repetition of unlawful conduct or to guard against reasonably apprehended misconduct or infringement of legal right.' " Sheahan v. Upper Greenwood Lake Prop. Owners Ass'n., 36 N.J. Super. 133, 136, 115 A.2d 129 (App. Div. 1955) (quoting Hoffmann-LaRoche, Inc., v. Weissbard, 11 N.J. 541, 551, 95 A.2d 398 (1953) ).
A party who invokes (b)(2) for class certification must be seeking declaratory *983 or injunctive relief and the defendant must have acted or refused to act on grounds generally applicable to the class. This latter requirement is generally referred to as the need for cohesiveness. Amchem. Prods., Inc. v. Windsor, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). "Because there is no right to opt out from such a class, and because significant individual issues in a[ ](b)(2) class might present manageability issues and undermine the value of utilizing the class action mechanism, ... such classes must be cohesive." Shelton, 775 F. 3d at 561.
"In the context of a (b)(2) application, cohesiveness is considered 'a natural consequence' of the second requirement." Goasdone, 354 N.J. Super. at 531, 808 A.2d 159 (citing Santiago v. City of Philadelphia, 72 F.R.D. 619, 627 (E.D. Pa. 1976) ). "Cohesiveness requires a certain 'homogeneity' of the claims of the class members.... [which] has been described as the 'essence' of a (b)(2) class action." Id. at 533, 808 A.2d 159 (citations omitted). In *183 other words, there must be a "strong commonality of interests." Gates, 655 F.3d at 264.
Nevertheless, "a class action may be maintained under ... (b)(2) even though defendant's conduct is not damaging to every member of the class. What is important is that the relief sought by the named plaintiffs should benefit the entire class." Laufer, 385 N.J. Super. at 183, 896 A.2d 1101 (citations and internal quotation marks omitted). "Injuries remedied through (b)(2) actions are really grouped, as opposed to individual injuries." Shelton, 775 F. 3d at 561 (quoting Barnes v. Am. Tobacco Co., 161 F.3d 127, 143 n.18 (3d Cir. 1998) ). Therefore,
[i]n order to determine if the class meets the requirement of cohesiveness under (b)(2), the court must analyze the legal and factual issues involved in the specific case, and determine if the claims of class members can more sensibly be adjudicated as a group or if the case would essentially break down into litigation of individual claims due to the presence of significant individual issues.
[ Goasdone, 354 N.J. Super. at 536, 808 A.2d 159.]
For example, in Laufer, the plaintiff filed a class action against an insurance company for violations of the CFA. 385 N.J. Super. at 176, 896 A.2d 1101. The plaintiff alleged the insurance company violated the CFA by sending notices to its insureds stating they had nursing home coverage, when in fact, they did not. Id. at 176-78, 896 A.2d 1101. Plaintiff sought monetary damages on behalf of herself, and injunctive and declaratory relief on behalf of a class of individuals who were also sent the notices. Id. at 178, 896 A.2d 1101. The plaintiff sought "an injunction compelling defendants to send written notice to all class members, notifying them in plain and prominent language that they do not, and have not had, nursing home coverage, and notifying them that the [c]ourt has declared" the representations violated the CFA. Ibid.
We affirmed the Law Division's decision to certify the class under (b)(2). Id. at 184, 896 A.2d 1101. In doing so, we observed that the notices "were sent to all policyholders" and "the limited injunctive relief sought ... would clearly 'benefit the entire class.' " Id. at 183-84, 896 A.2d 1101 (quoting Baby Neal v. Casey, 43 F.3d 48, 59 (3d Cir. 1994) ). Therefore, we implicitly found that *184 plaintiff's claims were cohesive because everyone was at least sent the notice. See id. at 184, 896 A.2d 1101.
Although certain individuals may not have opened or relied upon the notice, the "limited injunctive relief sought," namely a notice indicating that the insured did not have nursing home benefits, would affect *984 the class in the same way. In deciding Laufer, we held that injunctive relief for the class was proper even though there was no realistic possibility that the named plaintiff was at risk of any future injury from the defendant's wrongful conduct. Id. at 188, 896 A.2d 1101.
B.
With these guiding principles in mind, we examine the " 'claims, defenses, relevant facts, and applicable substantive law,' " Dugan, at 231 N.J. at 49-50, 171 A.3d 620 (quoting Iliadis, 191 N.J. at 107, 922 A.2d 710 ), relating to plaintiff's CFA and TCCWNA claims for which (b)(2) certification was sought. Our examination is not focused on whether plaintiff will succeed, but on whether the claims are amenable to class certification. See Iliadis, 191 N.J. at 120-21, 922 A.2d 710 ; Beegal v. Park West Gallery, 394 N.J. Super. 98, 110-11, 925 A.2d 684 (App. Div. 2007) ; Delgozzo, 266 N.J. Super. at 180-81, 628 A.2d 1080.
1.
Turning first to his CFA claim, plaintiff alleges that defendant "knowingly and/or intentionally fail[ed] to disclose the prices of [various] ... beverages [it] offer[s] for sale[,]" thereby engaging in a knowing omission in violation of N.J.S.A. 56:8-2.2's prohibition against "bait and switch" advertising, and N.J.S.A. 56:8-2.5's requirement for "merchandise ... [to be] price marked at the point of purchase." As stated previously, plaintiff seeks injunctive relief for the class compelling disclosure of beverage prices and declaratory relief confirming that the failure to do so is an unlawful commercial practice under the CFA.
*185 "The CFA was enacted to 'provide[ ] relief to consumers from "fraudulent practices in the market place." ' " Dugan, 231 N.J. at 50, 171 A.3d 620 (alteration in original) (quoting Lee, 203 N.J. at 521, 4 A.3d 561 ). It "has been hailed as 'one of the strongest consumer protection laws in the nation[.]' " Weinberg v. Sprint Corp., 173 N.J. 233, 257, 801 A.2d 281 (2002) (Verniero, J., dissenting) (alteration in original) (quoting Governor's Press Release for Assembly Bill, No. 2402, at 1 (June 29, 1971)).
"Courts have emphasized that like most remedial legislation, the [CFA] should be construed liberally in favor of consumers." Belmont Condo. Ass'n, Inc. v. Geibel, 432 N.J. Super. 52, 75, 74 A.3d 10 (App. Div. 2013) (alteration in original) (quoting Cox v. Sears Roebuck & Co., 138 N.J. 2, 15, 647 A.2d 454 (1994) ). We must be "mindful that the Act's provision authorizing consumers to bring their own private action is integral to fulfilling the legislative purposes ...." Cox, 138 N.J. at 16, 647 A.2d 454.
The CFA prohibits "unlawful practices" which "can be divided, for analytical purposes, into three categories." Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 556, 964 A.2d 741 (2009) (citing Cox, 138 N.J. at 17, 647 A.2d 454 ). Unlawful practices can be "affirmative acts, claims asserting knowing omissions, and claims based on regulatory violations." Ibid. (citing Cox, 138 N.J. at 17, 647 A.2d 454 ); see also Dugan, 231 N.J. at 51, 171 A.3d 620 ("[a]n 'unlawful practice' contravening the CFA may arise from (1) an affirmative act; (2) a knowing omission; or (3) a violation of an administrative regulation").
Where a plaintiff's theory is based on a knowing omission, "the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud." Cox, 138 N.J. at 18, 647 A.2d 454 (citing *985 Chattin v. Cape May Greene, Inc., 124 N.J. 520, 522, 591 A.2d 943 (1991) (Stein, J., concurring)). However, where, as alleged by plaintiff here, the claim is based on a regulatory violation, a plaintiff need not demonstrate intent "because 'the regulations impose strict liability for such violations.' *186 " Bosland, 197 N.J. at 556, 964 A.2d 741 (first quoting Cox, 138 N.J. at 18, 647 A.2d 454 ; then citing Fenwick v. Kay Am. Jeep, Inc., 72 N.J. 372, 378, 371 A.2d 13 (1977) ).
The Legislature not only included affirmative acts and knowing omissions in the category of consumer fraud violations, but also "impose[d] strict liability" for regulatory violations, regardless of the defendant's intent. It did so because "parties subject to the regulations are assumed to be familiar with them, so that any violation of the regulations, regardless of intent or moral culpability, constitutes a violation of the [CFA]."
[ Spade v. Select Comfort Corp., 232 N.J. 504, 518, 181 A.3d 969 (2018) (alterations in original) (quoting Cox, 138 N.J. at 18-19, 647 A.2d 454 ).]
As originally enacted, only the Attorney General could enforce the CFA's provisions. Dugan, 231 N.J. at 50, 171 A.3d 620. However, the Legislature subsequently amended the CFA to permit private suits. Id. at 50-51, 171 A.3d 620. "It [now] affords a consumer legal relief, equitable relief, treble damages, and counsel fees." Pisack, 455 N.J. Super. at 240, 188 A.3d 1088 (citing N.J.S.A. 56:8-19). The amendment "provide[s] easier access to the courts for the consumer, ... increase[s] the attractiveness of consumer actions to attorneys[,] and ... reduce[s] the burdens on the Division of Consumer Affairs." Weinberg, 173 N.J. at 248-49, 801 A.2d 281 (alterations in original) (quoting Governor's Press Release for Assembly Bill, No. 2402, at 2 (Apr. 19, 1971)).
In addition to demonstrating that a defendant engaged in an unlawful practice, a private plaintiff asserting a claim under the CFA must also allege that he or she suffered an ascertainable loss, and "a causal relationship between the unlawful conduct and the ascertainable loss." Dugan, 231 N.J. at 52, 171 A.3d 620 (quoting D'Agostino v. Maldonado, 216 N.J. 168, 184, 78 A.3d 527 (2013) ). "An 'ascertainable loss' is one that is 'quantifiable or measurable' and not 'hypothetical or illusory.' " Pisack, 455 N.J. Super. at 240, 188 A.3d 1088 (quoting Lee, 203 N.J. at 522, 4 A.3d 561 ).
"The [CFA] creates a private cause of action, but only for victims of consumer fraud who have suffered an ascertainable loss." Weinberg, 173 N.J. at 249, 801 A.2d 281. "[A] consumer *187 merely needs to demonstrate that he or she suffered an ascertainable loss 'as a result of' the unlawful practice." Pisack, 455 N.J. Super. at 240-41, 188 A.3d 1088 (quoting Lee, 203 N.J. at 522, 4 A.3d 561 ). If the plaintiff can demonstrate that he or she has suffered an ascertainable loss, "a private action may seek to remedy a [CFA] violation not only as it affects the named plaintiff but also other consumers." Laufer, 385 N.J. Super. at 185, 896 A.2d 1101.
However, a private plaintiff need not succeed at trial in establishing an ascertainable loss to be entitled to injunctive relief. "Requiring a plaintiff ultimately to prove an ascertainable loss in order to obtain injunctive relief is too difficult a standard and would deter, rather than encourage, private causes of action, in contravention of the legislative scheme." Weinberg, 173 N.J. at 251, 801 A.2d 281. The plaintiff's claim of ascertainable loss only needs to survive a motion for summary judgment in order to pursue a claim for injunctive relief under the CFA. Id. at 253, 801 A.2d 281.
*986 "Claims under the CFA ... may be appropriate for class certification.... One consumer may not think it worthwhile to pursue such a claim, but if there are hundreds of such aggrieved consumers, a class may be appropriate." Pisack, 455 N.J. Super. at 250-51, 188 A.3d 1088. "[T]he class action rule should be construed liberally in a case involving allegations of consumer fraud." Laufer, 385 N.J. Super. at 185, 896 A.2d 1101 (quoting In re Cadillac, 93 N.J. 412, 435, 461 A.2d 736 (1983) ). "A consumer fraud class may be certified even where individual questions, such as the degree of damages due a particular class member or reliance by individual class members on a defendant's alleged misrepresentations, remain following resolution of the common issues." Beegal, 394 N.J. Super. at 111-12, 925 A.2d 684.
In a (b)(2) class action, only the lead plaintiff, not the class, needs to make a sufficient showing of ascertainable loss because "[a] class representative is not generally in a position to *188 present evidence that unnamed class members suffered ascertainable loss as a result of an alleged consumer fraud." Laufer, 385 N.J. Super. at 187, 896 A.2d 1101. Such a requirement could hamper "the maintenance of class actions." Ibid. "Therefore, only the named plaintiff ... is required to satisfy the threshold standing requirement of 'a claim of ascertainable loss that can survive a motion for summary judgment.' " Id. at 186, 896 A.2d 1101 (quoting Weinberg, 173 N.J. at 253, 801 A.2d 281 ).
Contrary to our dissenting colleague's view, Weinberg did not require that a named plaintiff in a (b)(2) class action establish at the class certification stage, or any subsequent stage, that any of the individual class members suffered an ascertainable loss. See post at 202-03, 213 A.3d at 994-95. Rather, " Weinberg ma[de] clear" that a named plaintiff could obtain injunctive relief on his own behalf and behalf of a putative class if he could survive a motion for summary judgment, after class certification.
In Weinberg, the Court considered whether the named plaintiff could pursue a claim for injunctive relief under the CFA, but unlike the present case, did so after the trial court certified the class, after discovery, and after summary judgment was granted against the named plaintiff, without any consideration of the individual class members' claims. 173 N.J. at 237-40, 801 A.2d 281. The Court concluded that the individually named plaintiff could not proceed with the class action claim for injunctive relief because he, not the individual class members, was not able to "demonstrate that his claim of personal ascertainable loss posed a genuine issue of material fact that required submission to a jury ...." Id. at 240, 801 A.2d 281 (emphasis added).
The Court held that if the plaintiff could have successfully opposed summary judgment, he could have pursued a claim for injunctive relief even if he did not ultimately prove ascertainable loss. It stated:
[A] plaintiff with a bona fide claim of ascertainable loss that raises a genuine issue of fact requiring resolution by the factfinder would be entitled to seek also injunctive relief when appropriate, and to receive an award of attorneys' fees, even *189 if the plaintiff ultimately loses on his damage claim but does prove an unlawful practice under the Act.
[ Id. at 253, 801 A.2d 281.]
The Court did not say that the plaintiff would be barred from pursing that claim on behalf of the class if he did not establish on summary judgment each class members' claim of ascertainable loss. As we observed in Laufer, a reading of *987 Weinberg to require that showing, especially at the class certification stage, would interfere with the benefits of pursuing a CFA class action, which are "encouraged" to "vindicat[e] ... rights protected by the [CFA] ...." 385 N.J. Super. at 187, 896 A.2d 1101.
For that reason, we have looked to a named plaintiff's claims rather than those of the individual class members. See, e.g., Hoffman v. Hampshire Labs, Inc., 405 N.J. Super. 105, 114, 963 A.2d 849 (App. Div. 2009) (affirming a CFA class action's dismissal under Rule 4:6-2 where the named plaintiff's "complaint ... fail[ed] to set forth sufficient facts that, if proven, would establish that plaintiff suffered an 'ascertainable loss' (emphasis added)). Notably, consistent with Weinberg, in Laufer, plaintiff did not even allege that the class members suffered an ascertainable loss, only that she did, and after considering the plaintiff's claim we determined (b)(2) certification was warranted. 385 N.J. Super. at 178-79, 896 A.2d 1101.
Applying these guiding principles to the motion judge's decision, it is evident that he conflated various concepts regarding plaintiff's CFA claim. First, he questioned plaintiff's ability to maintain a CFA action for injunctive relief as compared to the Attorney General's. As discussed, that concern had no legal basis because plaintiff pled a viable claim that he suffered such a loss. Second, the judge misconstrued the requirement for cohesiveness to include a requirement that plaintiff had to prove that the class members could all establish damages or an ascertainable loss. This consideration too has no place in determining (b)(2) class certification. Id. at 188, 896 A.2d 1101. Likewise, the judge's consideration of plaintiff's ultimate success on the merits of his class claim for a *190 permanent injunction was not appropriate. Delgozzo, 266 N.J. Super. at 180-81, 628 A.2d 1080.
Also, contrary to the motion judge's conclusion, Dugan does not bar plaintiff's CFA claims for injunctive relief. In Dugan, the Court also addressed claims for injunctive relief made in the companion case that it decided, Bozzi v. OSI Restaurant Partners LLC, (A-93-15). The class in Dugan was much broader than in the present case. "[T]he class defined by the trial court consisted of '[a]ll persons who visited a [TGIF] restaurant in New Jersey that is owned by [TGIF] (i.e., company owned store) from January 12, 2004 to July 14, 2014, and purchased an offered but unpriced soda, beer or mixed drink.' " Dugan, 231 N.J. at 39, 171 A.3d 620 (second, third, and fourth alterations in original). The Bozzi class was more similar to plaintiff's class in this action. In Bozzi, "[t]he court defined the class to include "[a]ll persons who: (a) visited any [of the two franchisees'] restaurant[s] in New Jersey, from [December 23, 2004] to the present date; and (b) purchased an item offered on the menu or table placards for which no price was disclosed on the menu or table placard." Id. at 42-43, 171 A.3d 620 (emphasis added).
Addressing Dugan's claims, the Court held that under (b)(3), the plaintiff failed to "establish[ ] the predominance with respect to their CFA claims," "[b]ecause our CFA class action jurisprudence rejects 'price-inflation' theories" "for a class numbering in the millions, [where plaintiff claimed] that TGIF charged each member of the class $1.72 more than the 'fair' or 'reasonable' prices that it would have charged had it disclosed its beverage prices on the menu." Id. at 34, 171 A.3d 620.
As the Court stated, it "reach[ed] a different conclusion" in Bozzi. Id. at 35, 171 A.3d 620. It explained that for the (b)(3)
*988 predominance requirement to be met, a more limited class was required. It stated the following:
Although Bozzi asserts general claims that the defendant's restaurants failed to disclose prices, his allegations focus primarily on a specific pricing practice. He alleges that the defendant's restaurants violated the CFA by increasing the price charged to a customer for the same brand, type, and volume of beverage in the *191 course of the customer's visit to the restaurant, without notifying the customer of the change. Bozzi's counsel represents that this price-shifting claim is supported by claimant-specific receipts showing that each customer making this claim was charged different prices for the same brand, type, and volume of beverage in the course of a single visit to one of the defendant's restaurants.
We hold that if the Bozzi class is redefined to include only customers who make that specific CFA claim, and the claim is limited accordingly, plaintiff Bozzi has met the requirements of Rule 4:32-1 and may attempt to prove that claim on behalf of the class.
[ Ibid. ]
The Court directed that "[o]n remand, the trial court should certify the class solely for the purpose of pursuing CFA claims based upon the defendant restaurants' alleged practice of charging a customer different prices for beverages of the same brand, type, and volume during the same restaurant visit." Id. at 67, 171 A.3d 620. Although the Court also vacated the injunctive relief that the trial court granted in Bozzi compelling the defendant to list beverage prices, it did so only because the injunction applied to too broad of a class and because "Bozzi offered no argument in support of the trial court's injunctive relief." Ibid. n.14. However, it specifically preserved Bozzi's claim for injunctive relief under the CFA, directing the trial court to consider the application anew after the "certification of the more limited class." Ibid. The fact that Bozzi did not satisfy the (b)(3) predominance requirement did not therefore persuade the Court that injunctive relief could not be granted.
We also disagree with the motion judge's view of "cohesiveness" under (b)(2). We conclude that the appropriate consideration is whether a single injunction would provide relief to all members of the purported class. Here, regardless of what happened at defendant's restaurants that led to patrons who received menus ordering beverages, if plaintiff is correct, the law required that they all be advised on the menu of the pricing for all items being offered for sale. A (b)(2) class seeking injunctive relief directing the inclusion of menu pricing does not require a class member to be able to opt in or out of the class and the relief, if granted, would apply to all patrons who visited the establishments.
*192 It is the remedy's ability to satisfy all similar claims that is a proper consideration in determining (b)(2) cohesiveness, not the commonality of the patron's dining experiences at the two restaurants. The mere fact that some members of the class who had a different dining experience after receiving menus are swept up into the class does not cause them or defendant any harm or additional burden. All members will benefit if plaintiff proves the CFA has been violated, and defendant will have no obligation to all class members other than posting prices, if required.
Significantly, the cost of complying with injunctive relief if granted is far less in plaintiff's case than in Laufer where the defendant was directed to print and mail notices to each class member. Here, the Dugan Court's concern about the cost of dealing with millions of claims does not exist. Defendant's menus need only be updated *989 to reflect prices and there is no need to pay the costs of identifying and notifying individual class members.
We conclude that plaintiff's CFA claim was appropriate for class certification and raised the precise type of claim that, if proven, was amenable to a single injunction that would afford relief to the entire class, as contemplated by (b)(2). For that reason, we reverse the motion judge's determination as to plaintiff's CFA claim.
2.
We reach a similar conclusion regarding plaintiff's other (b)(2) claim that defendant violated the TCCWNA, which "is intended 'to prevent deceptive practices in consumer contracts.' " Spade, 232 N.J. at 515, 181 A.3d 969 (quoting Dugan, 231 N.J. at 67, 171 A.3d 620 ). "Its purpose 'is to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms or warranties in consumer contracts.' " Pisack, 455 N.J. Super. at 241, 188 A.3d 1088 (quoting Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co., 207 N.J. 428, 457, 25 A.3d 1027 (2011) ). It "authorizes the award of a civil penalty, damages, attorneys' fees, and *193 costs to an 'aggrieved consumer[.]' " Spade, 232 N.J. at 516, 181 A.3d 969 (quoting N.J.S.A. 56:12-17).
Under the TCCWNA, a plaintiff must establish:
first, that the defendant was a "seller, lessor, creditor, lender or bailee or assignee of any of the aforesaid"; second, that the defendant offered or entered into a "written consumer contract or [gave] or display[ed] any written consumer warranty, notice or sign"; third, that at the time that the written consumer contract is signed or the written consumer warranty, notice or sign is displayed, that writing contains a provision that "violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee" as established by State or Federal law; and finally, that the plaintiff is an "aggrieved consumer."
[ Ibid. (alterations in original) (quoting N.J.S.A. 56:12-15, - 17 ).]
See also Dugan, 231 N.J. at 69, 171 A.3d 620 ; Pisack, 455 N.J. Super. at 241, 188 A.3d 1088.
Under the TCCWNA, there must be a "written consumer contract[,] ... notice[,] or sign" and the statute "does not apply when a defendant fails to provide the consumer with a required writing." Dugan, 231 N.J. at 70-71, 171 A.3d 620 (alterations in original) (emphasis added) (first quoting N.J.S.A. 56:12-15 ; then citing Jefferson Loan Co. v. Session, 397 N.J. Super. 520, 540-41, 938 A.2d 169 (App. Div. 2008) ). However, when a consumer contract contains language "prohibited by [a regulation, that] ... alone [may] constitute a violation of a 'clearly established legal right of a consumer or responsibility of a seller' under N.J.S.A. 56:12-15, and thus may provide a basis for relief under the TCCWNA." Spade, 232 N.J. at 520, 181 A.3d 969.
Indulging plaintiff's contentions here with a liberal construction, a menu is at least an offer to contract. Moreover, while the TCCWNA speaks to inclusion of a prohibited clause or provision, it clearly applies where the offer to contract intentionally omits information that is at least in this case, alleged to be require under the law.
To be an aggrieved consumer under the TCCWNA, a consumer must "ha[ve] suffered some form of harm as a result of the defendant's conduct." Id. at 522, 181 A.3d 969. The harm is not *194 "limited to injury compensable by monetary damages." Id. at 523, 181 A.3d 969.
*990 Proof of harm resulting from contract language prohibited by N.J.S.A. 56:12-15 may warrant a civil penalty under N.J.S.A. 56:12-17, even if the harm is not compensable by damages.
In the absence of evidence that the consumer suffered adverse consequences as a result of the defendant's regulatory violation, a consumer is not an "aggrieved consumer" for purposes of the TCCWNA.
[ Id. at 524, 181 A.3d 969.]
In Dugan, the Court did "not determine whether a defendant restaurant's presentation of a menu that omits beverage prices gives rise to a TCCWNA claim." 231 N.J. at 70-71, 171 A.3d 620. Rather, it determined that the Dugan and Bozzi plaintiffs could not satisfy the predominance requirement for (b)(3) certification. Id. at 71, 171 A.3d 620. It found that the plaintiffs could not be "aggrieved consumers" without proof that they each actually received menus from defendant because "the TCCWNA addresses 'contract[s],' 'warrant[ies],' 'notice[s],' and 'sign[s]' and does not apply when a defendant fails to provide the consumer with a required writing." Id. at 71, 171 A.3d 620 (alterations in original) (quoting N.J.S.A. 56:12-15 ). For that reason,
[e]ven if [the Court] accept[ed] plaintiff's theory of liability under the TCCWNA, .... a claimant who does not, at a minimum, prove that he or she received a menu cannot satisfy the elements of TCCWNA and is not an "aggrieved consumer." In that critical regard, individual questions would predominate over common issues at trial.
[ Id. at 72-73, 171 A.3d 620 (emphasis added).]
The Court also rejected plaintiff's claim under the TCCWNA because there was no evidence, as required by the Act, that the failure to post beverage prices on a menu violated a "clearly established legal right." Id. at 73, 171 A.3d 620. It observed that there were no published opinions or actions taken by the Attorney General that established the failure to list beverage prices on a menu violated N.J.S.A. 56:8-2.5 as alleged by the plaintiffs. Ibid.
Finally, the Court concluded that the Legislature did not intend that the TCCWNA's civil penalties should be imposed as the plaintiffs suggested. It stated that "[n]othing in the legislative *195 history of the TCCWNA, which focuses on sellers' inclusion of legally invalid or unenforceable provisions in consumer contracts, suggests that when the Legislature enacted the statute, it intended to impose billion-dollar penalties on restaurants that serve unpriced food and beverages to customers." Id. at 74, 171 A.3d 620.
The concerns raised in Dugan regarding the TCCWNA claims do not come in to play in plaintiff's case here. First, as noted, the Court did not address the TCCWNA claim for (b)(2) certification, which does not require a focus on each purported class member's individual dining experience. By definition, as plaintiff identified the class, plaintiff and each member of the class received a menu and ordered a beverage.
Second, the granting of (b)(2) class certification here does not raise concerns about the Legislature's intention to not impose extreme financial hardship for TCCWNA violations. The focus is rather on whether a single injunction and declaratory relief, if either is warranted, can provide a remedy to the entire class or none of them in order to compel the inclusion of beverage prices on menus, if their omission gives rise to a violation of law. Moreover, if required, the cost of altering menus for the two restaurants is minimal compared to the costs of *991 the penalties addressed by the Dugan Court.
Third, although we agree that the Dugan Court correctly observed that there is no case law or Attorney General opinions declaring the failure to include beverage prices on a menu to be a violation of the TCCWNA or any other law, we note that there is no legal authority that holds to the contrary-that the omission is in fact lawful. Finally, plaintiff's class is narrowly drawn to include only those who ordered off menus without beverage prices. Whether one or all members of the class did so is of no moment if defendant was required to include the price in order to not violate the law. If a court were to find that the failure to disclose prices on a menu given to plaintiff and the class members was a violation of the TCCWNA because a required provision to a consumer *196 contract was not included, we cannot envision any circumstances where declaratory and injunctive relief would not be valid remedies to consider, if necessary, to secure future compliance with the law. To hold otherwise, would allow a merchant to intentionally violate the law without being subjected to any action brought under (b)(2) or (b)(3) seeking to enforce the CFA and the TCCWNA.
Reversed and remanded for entry of an order vacating the denial of class certification and ordering (b)(2) class certification. We do not retain jurisdiction.

Plaintiff was originally one of the named class representatives in Dugan but as the Court noted, plaintiff's claims "related to a visit to a franchise-owned-TGIF restaurant," and were dismissed by the trial court when it "exclude[ed] customers who exclusively visited franchise TGIF restaurants," as compared to company TGIF owned establishments. Dugan, 231 N.J. at 39 n.4, 171 A.3d 620.

We have not been provided with a copy of the original complaint.

The exact definition of the purported class is derived from plaintiff's later-filed amended complaint because we have not been provided with a copy of the original complaint or the certifications filed in support of any of plaintiff's motions.

N.J.S.A. 56:8-2.2 provides that it shall be unlawful for a seller to advertise "merchandise as part of a plan or scheme not to sell the item or service so advertised or not to sell the same at the advertised price." N.J.S.A. 56:8-2.5 provides that it shall be unlawful for anyone "to sell, attempt to sell or offer for sale any merchandise at retail unless the total selling price of such merchandise is plainly marked by a stamp, tag, label or sign either affixed to the merchandise or located at the point where the merchandise is offered for sale." "Merchandise" is defined as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J.S.A. 56:8-1(c).

In Dugan, Justice Albin stated in his dissent that TGIF's conduct violated the CFA. In his analysis, he described the results of TGIF's market analysis and their application as follows:
TGIF determined the "fair" price and "think-twice" price for the purchase of meals with and without alcoholic beverages. The "think-twice" price, apparently, is the price at which bells go off in patrons' heads and purchases decline because consumers do not want to exceed their "check thresholds." From TGIF's perspective, the beauty of not placing beverage prices on menus in violation of the CFA is that uninformed patrons do not know when their purchases have exceeded the "fair" price and reached the "think-twice" price.
TGIF learned through the study what is commonly known-that an informed consumer will make rational pricing decisions. Because restaurants "with alcohol pricing on the menu experienced a [$]1.72 [per-person average] decline as guests traded down," TGIF made the corporate decision that "alcohol pricing will not be placed on the menu." In other words, TGIF determined that it did not pay to conform to the law and that it was more profitable to capitalize on the ignorance of its patrons. From TGIF's own statistical analysis comes the calculation of ascertainable loss to its patrons and the gain to itself.
[Dugan, 231 N.J. at 78-79, 171 A.3d 620 (alterations in original).]

It is undisputed that (b)(1) is not the subject of the motion judge's ruling or relevant to this appeal.

"Where there is no New Jersey case law relevant to a class certification issue, 'our courts have consistently looked to the interpretations give the federal counterpart for guidance.' " Laufer, 385 N.J. Super. at 183, 896 A.2d 1101 (quoting Delgozzo, 266 N.J. Super. at 188, 628 A.2d 1080 ).

To the extent that our dissenting colleague relies upon Gates's holding that the denial of (b)(2) class certification in that case supports the same result here, we conclude such reliance is inapposite. Gates involved a class-based medical monitoring claim under Pennsylvania law arising out of allegations that a company dumped toxic wastewater that seeped into an aquifer and evaporated, polluting the air with the toxic carcinogen, vinyl chloride. The Third Circuit considered the elements of a Pennsylvania medical monitoring claim and concluded that "[p]laintiffs ... failed to propose a method of proving the proper point where exposure to vinyl chloride presents a significant risk of developing a serious latent disease for each class member.... [or that] the proposed monitoring regime [was] reasonably medically necessary." Gates, 655 F.3d at 268. As a result, the plaintiffs could not "prove the medical necessity of [their] proposed monitoring regime without further individual proceedings to consider class members' individual characteristics and medical histories and to weigh the benefits and safety of a monitoring program." Id. at 269. For that reason, the court found that "[p]laintiffs c[ould not] show the cohesiveness required for certification of a Rule 23(b)(2) class." Ibid. No such issues exist in the present CFA/TCCWNA matter.